[Crim. No. 7487. Second Dist., Div. Two. July 24, 1961.]

THE PEOPLE, Respondent, v. ABRAM CONTRERAS PACHECO, Appellant.

John L. Seitz, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow and Don G. Kircher, Deputy Attorneys General, for Respondent.

FOX, P. J.—Defendant was convicted of two counts of violating section 11501 of the Health and Safety Code (sale of heroin) and one count of violating section 182 of the Penal Code (conspiracy to sell a narcotic, namely heroin).[1] Defendant has appealed from the judgment.

On September 10, 1959, Primo T. Orosco, a special narcotics agent for the State Department of Justice, and Agent Gary Shoemaker and Sergeant Miller of the San Luis Obispo County Sheriff's Office, were assigned to work in the area of San Luis Obispo, Santa Maria, Guadalupe and other nearby towns to which their work might take them. At approximately five minutes to nine o'clock that evening Agent Orosco had a conversation with one Nick Ramies in Guadalupe. Agent Orosco inquired of Ramies whether he could purchase narcotics. Ramies indicated it would be necessary for him ''to see the man''; that ''he would go see the man and see what he could do and would meet [him] at the location past the bridge'' in a few minutes. At approximately ten minutes past nine o'clock, Agent Orosco was parked in his car on a ''lonely road'' about three-tenths of a mile north of the Santa Maria bridge on Highway 1. While there, a light colored 1959 Chrysler, license number SHT 724, approached Orosco's vehicle from the direction of Guadalupe. It slowed down but passed, proceeding ''a little further to where there was a dirt road,'' then made a U-turn, came back and momentarily parked even with Orosco's car, ''which was parked over to the side of the road.'' Ramies emerged from the Chrysler. As he did so, the light came on inside the car and Agent Orosco observed the defendant, leaning forward, as the driver of the Chrysler. Defendant then drove off in a southern direction toward the city of Guadalupe. Ramies went to Orosco's car where he sold him four capsules of heroin for 20 dollars. Payment was made with a $20 bill, the serial number of which had been recorded. A fluorescent powder had been sprinkled on the bill and Agent Shoemaker's name written on it with a fluorescent pencil. Orosco indicated his interest in making a further purchase of heroin, seeking a bargain price of ''20 capsules for $50.00.'' Ramies stated he would ''see what he could do after he contacted the man.'' Another meeting was arranged at the same place for approximately 11 o'clock that night. Agent Orosco drove Ramies back to Guadalupe, drop-

---

[1] It was also charged that he had suffered two prior convictions involving narcotics. He admitted these priors.

ping him off there at approximately 9:25. Orosco then met Shoemaker and Miller in order to formulate plans for an arrest. At approximately 11 p. m. the Chrysler approached the appointed rendezvous and made the same maneuver as before (parking, however, "just a little further back than the first time"), resulting in Orosco's observing defendant as the driver when Ramies emerged from the car. Ramies entered Orosco's car. The agent purchased four more capsules from him. They had some further discussion relative to price and quantity, during which Orosco made inquiry about the defendant's activities. Ramies indicated that defendant had 15 or 20 capsules. Ramies also stated that he was able to get "stuff on credit," and that he "owed Mr. Pacheco some money." Orosco inquired of Ramies, if he took him back to Guadalupe, whether he would be able to arrange for a larger purchase. Ramies stated he thought he could but he would have to talk to him, referring to defendant. At this point Orosco observed that Ramies had a balloon containing two capsules in his hand. Orosco aided by Agent Shoemaker, who had been hiding on the floor of the car between the front and rear seats, and Sergeant Miller, who had been hiding in the trunk of the car, arrested Ramies. Ramies was interrogated and turned over to Sergeant Miller for transportation to the county jail. Agent Orosco and Shoemaker proceeded to Guadalupe where they drove down the main street until they found the Chrysler driven by defendant. Agent Shoemaker remained with the car while Agent Orosco checked the local taverns and card rooms searching for defendant. He was found observing a poker game in a tavern. Orosco identified himself and advised defendant that he would like to talk to him. Defendant was taken outside to the state vehicle where Agent Shoemaker examined his hands under a fluorescent lamp. His hands were an orange color under the lamp. Defendant was then taken to the Guadalupe police station where $188 was removed from his wallet and examined with the fluorescent lamp. Shoemaker removed a $20 bill which had an orange glow and returned the remaining $168 to defendant. The $20 bill with the orange glow also revealed the name of Agent Shoemaker written across it. Upon examining defendant's car numerous rubber balloons were found in the glove compartment, but no narcotics. Orosco and Shoemaker then requested defendant to allow them to search his room at his hotel in Santa Maria. Defendant consented to the search

which, however, produced no narcotics. Defendant was then taken to the San Luis Obispo County Jail.

Defendant told the officers that Ramies had asked to borow his car that evening but he had refused to let him have it; that he did not lend his car to anyone. He further stated that Ramies owed him approximately $100, but when asked for an explanation he refused to give any; also, he guessed if he got the marked $20 bill from anyone he would have gotten it from Ramies. He denied, however, any knowledge of Ramies' narcotic activities.

Defendant did not take the stand.

In seeking a reversal, defendant makes three contentions: (1) that a prima facie showing of a conspiracy had not been made when the court allowed Agent Orosco to relate statements of Ramies to him; (2) that the evidence is insufficient to sustain the judgment, and (3) that the court erred in allowing it to appear that Ramies was either a codefendant or in some other way was directly affected by the result of defendant's trial.

The gist of a criminal conspiracy is a corrupt agreement of two or more persons to commit an offense prohibited by statute, accompanied by some overt act in furtherance of the objects of the agreement. (Pen. Code, §§ 182, 184; *People v. Brownstein*, 109 Cal.App.2d 891, 892 [241 P.2d 1056]; *People v. Pierce*, 110 Cal.App.2d 598, 610 [243 P.2d 585].) The existence of the conspiracy may be established by circumstantial evidence. (*People v. Steccone*, 36 Cal.2d 234, 237-238 [223 P.2d 17].) The agreement may be inferred from the acts and conduct of the defendants in mutually carrying out a common purpose in violation of the statute (*People v. Benenato*, 77 Cal.App.2d 350, 358 [175 P.2d 296]; *People v. Brownstein, supra*), but it need not be shown that the parties met and agreed to undertake the performance of the unlawful acts. (*People v. Sampsell*, 104 Cal.App. 431, 438 [286 P. 434].)

It is not necessary that the overt act be criminal. (*People v. Gordon*, 71 Cal.App.2d 606, 628 [163 P.2d 110].) If such acts are done as a step toward the furtherance of the conspiracy they are sufficient. (*People v. Gilbert*, 26 Cal.App. 2d 1, 23 [78 P.2d 770].) The overt act may be performed by only one of the conspirators and yet be sufficient, for the members of the conspiracy are bound by all acts of all members done in furtherance of the agreed plot. (*People v. Creeks*, 170 Cal. 368, 374 [149 P. 821]; *People v. Pierce, supra.*)

■ After proof of a conspiracy, the acts or declarations of a conspirator against his coconspirators, and in furtherance of the conspiracy, may be received in evidence though the other conspirators were not present. (Code Civ. Proc., § 1870, subd. 6; *People* v. *Temple,* 15 Cal.App.2d 336, 339 [59 P.2d 417]; *People* v. *Gordon, supra.*) ■ The foundational requirement is satisfied by prima facie proof of the conspiracy. (*People* v. *Catlin,* 169 Cal.App.2d 247, 252 [337 P.2d 113]; *People* v. *Steccone, supra,* p. 238; *People* v. *Talbott,* 65 Cal.App.2d 654, 663 [151 P.2d 317].) ■ The existence of a conspiracy is essentially a question of fact. (*People* v. *Sampsell, supra,* p. 439.) It is therefore the responsibility of the trier of fact to determine the weight to which the evidence is entitled, and the inferences reasonably to be drawn therefrom. (*People* v. *Sampsell, supra.*)

■ The facts and circumstances attendant upon the two meetings in the nighttime on "this lonely road" three tenths of a mile north of the Santa Maria bridge on Highway 1, the sale of the heroin by Ramies to Agent Orosco, and the possession of the marked $20 bill by defendant later that evening, together with the inferences that may reasonably be drawn therefrom, point to the probability of collaboration between defendant and Ramies in illegal narcotic operations and make a prima facie showing of a conspiracy between them. Under the above authorities, it was then proper to admit in evidence the testimony of Orosco relative to the statements made to him by Ramies. It is therefore apparent that there is no merit in defendant's first point.

■ In connection with defendant's argument that the evidence is insufficient to support the judgment of conviction, it must be borne in mind that before a judgment may be reversed on that ground it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) ■ We must assume in support of the judgment the existence of every fact which the jury could have reasonably deduced from the evidence and then determine whether the facts justify "the inference of guilt." (*People* v. *Deysher,* 2 Cal.2d 141, 149 [40 P.2d 259].) ■ If the circumstances reasonably justify the determination of the trier of fact, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence

of the defendant will not warrant a reversal. (*People* v. *Newland, supra; People* v. *Frankfort,* 114 Cal.App.2d 680, 689 [251 P.2d 401].) The circumstances here justify the inference that Ramies and defendant had some agreement or mutual understanding whereby Ramies acted as the middle man in the sale of the contraband while defendant supplied it and the transportation. It certainly cannot be said as a matter of law that the evidence and the reasonable inferences therefrom are insufficient to support the conviction on the conspiracy count. The conspiracy having been established and the two sales of heroin by Ramies having been proved as overt acts in furtherance of said conspiracy, it follows that defendant's conviction of the sale of heroin must also be sustained.

It will be recalled that defendant failed to testify. In commenting upon such a circumstance, the court stated, in *People* v. *Ashley,* 42 Cal.2d 246, at page 268 [267 P.2d 271] : ''A defendant's failure to take the stand 'to deny or explain evidence presented against him, when it is in his power to do so, may be considered by the jury as tending to indicate the truth of such evidence, and as indicating that among the inferences that may reasonably be drawn therefrom, those unfavorable to the defendant are the more probable.' (*People* v. *Adamson,* 27 Cal.2d 478, 489 [165 P.2d 3].) But the failure to testify will not supply a lacuna in the prosecution's proof.''

 We fail to find any merit in defendant's last point wherein he argues that defendant was deprived of a fair trial because the court allowed the information to be read to the jury prior to the reception of evidence, thus allowing it to appear that Ramies was a codefendant or in some other way directly affected by the results of this trial. In this connection he further complains because the district attorney upon occasion during the course of the trial referred to Ramies as a codefendant or as a party-defendant; also that the instructions were confusing in this respect. He points out that Ramies was not in fact before the court at that time, and his case was not then being considered. A conspiracy, by its very nature, necessarily involves at least two people. In order to prove the agreement between them, plus an overt act in furtherance of the conspiracy, it is virtually necessary to refer to the parties as coconspirators. The fact that one of the alleged conspirators is referred to as a codefendant does not appear to be any justification for concluding that

the other coconspirator, who was then being tried, was thereby prevented from having a fair determination of his case. It is likewise difficult to see how the reading of the information to the jury, which of necessity must state the names and the acts with which the parties are charged, could cause the defendant on trial to be prejudiced. The same may likewise be said with respect to the use of Ramies' name in the instructions, for it was necessary to state who the parties were that committed the asserted illegal acts. ▇▇▇ It does not appear that the defendant raised any objection to the references by the district attorney to Ramies as a defendant. He is therefore in no position to make that objection for the first time on appeal.

*People* v. *Docherty*, 178 Cal.App.2d 33 [2 Cal.Rptr. 722], a conspiracy prosecution in which the coconspirator had not been apprehended, throws substantial light upon the problem here involved. In that case the court stated (p. 40) that it was proper to instruct that a conspiracy involves the actions of more than one person; that the coconspirator was named in the information as a codefendant, and that his actions could be considered by the jury, even though he was not in court, and that it might be helpful if they pictured in their minds that he was actually present at the counsel table. This case makes it clear that a coconspirator may be named as a codefendant in an information and that the jury may be apprised of that fact. It seems apparent that mere reference to the coconspirator as a codefendant by the prosecutor during the trial is no more detrimental to the defendant on trial than picturing the other party to the conspiracy at the counsel table. The *Docherty* case clearly indicates that the matters here complained about could not properly be considered as preventing the defendant herein from having a fair trial.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.