[Crim. No. 8643.   Second Dist., Div. One.   June 28, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. RICHARD MIGUEL TOSTADO, Defendant and Appellant.

Bradford A. Arthur for Defendant and Appellant.

Stanley Mosk, Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Tostado and codefendant Casey were convicted by a jury of selling marijuana to an undercover police officer on April 5, 1962; (Health & Saf. Code, § 11531); Tostado appeals from the judgment and order denying his motion for new trial. The appeal from the order is dismissed. (Pen. Code, § 1237; *People* v. *Eppers,* 205 Cal.App.2d 727 [23 Cal.Rptr. 222].)

Gary W. Turner, a Pasadena police officer, was assigned to special undercover vice duty; he was familiar with marijuana and the narcotics jargon. In early March 1962, dressed in general students' wear, he arranged to meet appellant at Pasadena City College; about a week and a half later through appellant he met codefendant Casey. For the next two months Turner saw them almost daily, acquired a close friendship and association with them, and "more or less supported the defendants with City" funds. On several occasions following the third week in March Turner saw marijuana in the possession of either or both defendants. Various times Turner took one or both along with other friends to the Xanadu, a coffee house. One evening at the Xanadu Turner gave appellant, who had no money, $10 which appellant used to purchase marijuana from a peddler; Turner and defendants later had a general conversation as to its quality and, after appellant manicured it and rolled it into cigarettes in Turner's presence, he saw it smoked at a private residence. The next day Turner

and appellant went to a park in Pasadena; appellant had the remainder of the marijuana in his possession. Turner tried to procure some of it for evidence but when appellant attempted to roll it into cigarettes the wind blew it into the grass. Some time around March 30, 1962, at Casey's residence Turner saw him roll a marijuana cigarette and heard him discuss its quality; he observed both appellant and Casey smoke it.

On April 4, around 8 p.m., after several hours' conversation with defendants during the day, Turner was sitting in his car in an alleyway between some apartments; appellant approached and told him that he and Casey were going to Venice and asked him, "Do you want to make it?" (meaning "to obtain marijuana," to "score"). Turner asked appellant how much he wanted; appellant in turn said, "How much do you want?" to which Turner replied: "A can." Turner gave appellant $8; he asked appellant when he could get it, and appellant told him he could get it the following day and would contact him. Appellant then walked toward his truck; Turner did not notice what Casey was doing during this time. The next day, April 5, around 7:30 p.m. Turner went to Casey's residence where defendants were eating dinner. After about 15 minutes Casey invited Turner upstairs; Turner saw Casey go to a closet covered by a drape, return with a cigar box, open it and take out a package. During this time appellant came upstairs and joined them; Casey handed Turner a package containing marijuana (Ex. 1), stating: "This is from Rick" (the name by which Turner knew appellant). It consisted of a roll of newspapers with black friction tape around it; the cigar box from which Casey took it appeared to contain other packages similarly wrapped. Turner then thanked appellant for having procured it for him. The package broke open and some of the contents fell on the floor; while he and Casey were picking up the marijuana, Casey said: "Well, it would take a good narcotics man to locate these." About one-half hour later Turner and appellant were sitting in front of Casey's residence; appellant asked to see the condition of the marijuana in the package. Turner took it out of his pocket and gave it to him; appellant tore the paper a little and examined the material and advised Turner how he could best manicure it since it was still on the stems. Turner thanked appellant for his advice and again thanked him for procuring the marijuana. Several hours later Turner turned the package over to Sergeant Cockel of the Pasadena Police Department.

A week or two later Turner gave appellant $10 to purchase another "can" of marijuana for him, but appellant could not procure it and returned the money. A week after the sale on April 5 Turner complained to both Casey and appellant about the quality of the marijuana he had received; appellant told him he would make it up to him in the future. At another time, while riding with Casey, Turner complained to him and Casey said: "I will get you all you want, fill this whole trunk."

Between April 20 and 25 Casey told Turner he planned to take a trip, and asked him if he wanted to have him "score" for him; Turner gave him $60 with which to buy one pound. Casey said he would meet him the next day. Thereafter Turner looked for him but did not see him again until April 30 in Santa Monica. Casey told him that the truck he went out in had broken down and that "things were too hot for him"; he promised Turner he would "make it good . . . for the $60."

On May 2 Turner participated in the arrest of Casey for the sale on April 5. Thereafter he and Cockel and another investigator had a conversation with appellant who was brought down from the jail; Turner was introduced to him as a police officer. Appellant became upset and said he didn't believe Turner was a policeman and wanted to see some identification; Turner identified himself and appellant asked him how he got into the group; then appellant shook hands and congratulated him for being a good undercover operator. During the conversation appellant stated that he recalled accepting $8 from Turner and said he needed the money for rent; he remembered the transaction on April 5 when the package was delivered to Turner.

Appellant did not take the stand, call any witnesses or offer a defense. Codefendant Casey, then 22 years old, admitted he smoked marijuana and had done so since he was 13, but denied he either sold or delivered Exhibit 1 to Turner on April 5. He claimed he ate dinner at the home of Robert and Julia Thomas on that evening. The Thomases testified Casey ate with them on April 5 between 5 and 10:30 p.m.; Robert was serving a jail sentence on a felony—offering marijuana (§ 11531), and Julia was on five years' probation for the same offense.

Appellant contends that the prosecution evidence "establishes an attempt on Officer Turner's part to entrap the appellant into the sale of narcotics" (A.O.B., p. 7) and there is

718

"no evidence that the appellant . . . sold marijuana" (A.O.B. p. 12); and that it was prejudicial error for the trial judge to admit certain evidence of appellant's prior acts of wrongdoing not connected with the offense charged.

Without question, the evidence viewed in a light most favorable to the verdict (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778]; *People* v. *Daugherty,* 40 Cal.2d 876 [256 P.2d 911]) supports the implied finding of the jury that appellant on April 5 sold marijuana to Turner. This court will not disturb a judgment for insufficiency of the evidence unless it clearly appears from the record that upon no hypothesis whatsoever is there sufficient substantial evidence to support the verdict. (*People* v. *Jones,* 36 Cal.2d 373 [224 P.2d 353]; *People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778]; *People* v. *Crooker,* 47 Cal.2d 348 [303 P.2d 753].)

A conviction in a case of this kind may rest upon the testimony of only one witness (*People* v. *Newman,* 102 Cal. App.2d 302 [227 P.2d 470]; *People* v. *Ruiz,* 205 Cal.App. 2d 674 [23 Cal.Rptr. 236]), and it need not be corroborated. (*People* v. *Lollis,* 177 Cal.App.2d 665 [2 Cal.Rptr. 420]; *People* v. *Casado,* 181 Cal.App.2d 4 [4 Cal.Rptr. 851].)

The evidence shows a simple "buy and sell" transaction between Turner, the buyer, and the appellant, the seller, with codefendant Casey making delivery for him. It is fundamental that the credibility of witnesses, the weight of evidence and the resolution of factual conflicts are committed to the trier of fact (*People* v. *Ruiz,* 205 Cal.App.2d 674 [23 Cal.Rptr. 236]); the jury accepted as credible Turner's version of what occurred. It had not the benefit of appellant's testimony or his defense, if one he had. His " ' . . . failure to take the stand "to deny or explain the evidence presented against him, when it is in his power to do so, may be considered by the jury as tending to indicate the truth of such evidence, and as indicating that among the inferences that may reasonably be drawn therefrom, those unfavorable to the defendant are the more probable." [Citations.]' " (*People* v. *Chapman,* 156 Cal.App.2d 151, 157 [319 P.2d 8]; *People* v. *Adamson,* 27 Cal.2d 478 [165 P.2d 3].)

Relative to the defense of entrapment, the evidence shows that Officer Turner, while working undercover in a narcotics investigation of the two defendants, dressed in regular student clothing, became so friendly and so ingratiated himself with them that when they went to Venice appellant asked Turner if he wanted to buy some marijuana.

While through his close relationship with defendants, Turner provided the opportunity for the commission of the offense, it is clear that the criminal intent originated in the mind of appellant. ■ ■ The availability of the defense of entrap-- ment "depends upon whether the intent to commit the crime originated in the mind of defendant or in the mind of the entrapping officer. . . ." (*People* v. *Benford*, 53 Cal.2d 1, 10 [345 P.2d 928].) Moreover, there appears to have been no solicitation by Turner, or his seduction of an innocent person into a criminal act. ■ ■ Nor do we find that he lured or inveigled appellant into selling him the narcotic or used any inducement or persuasion; even then, "If the officer uses no more persuasion than is necessary to an ordinary sale, and the accused is ready and willing to make the sale, there is no entrapment." (*People* v. *Lindsey*, 91 Cal.App.2d 914, 917 [205 P.2d 1114].) ■ ■ Appellant did not raise any issue of entrapment in the lower court (*People* v. *Lindsey*, 91 Cal.App.2d 914 [205 P.2d 1114]), and as stated in *People* v. *Braddock*, 41 Cal.2d 794 [264 P.2d 521], "Entrapment 'is a positive defense imposing upon an accused the burden of showing that he was induced to commit the act for which he is on trial' [citations]." (P. 803.) (See also *People* v. *Terry*, 44 Cal.2d 371 [282 P.2d 19].) The defense must be raised in the lower court; it cannot be raised for the first time on appeal. (*People* v. *Cline*, 205 Cal.App.2d 309 [22 Cal.Rptr 916]; *People* v. *Branch*, 119 Cal.App.2d 490 [260 P.2d 27].)

■ The main point of appellant's final argument is that the lower court improperly received evidence of appellant's conduct which constituted other criminal acts. The record discloses that on several occasions between the end of the third week of March and April 4, Officer Turner saw marijuana in the possession of both appellant and Casey; that Turner once gave appellant $10 with which he purchased marijuana from a peddler at the Xanadu, which appellant later manicured and rolled into cigarettes and smoked; that the next day Turner observed the remaining marijuana in appellant's possession; and that around March 30 Turner saw Casey and appellant smoke a marijuana cigarette at Casey's residence.

While it shows other wrongdoing on appellant's part, this evidence was properly admitted. ■ ■ "Knowledge of the narcotic character of the substance possessed, sold or

transported is essential. (*People* v. *Winston*, 46 Cal.2d 151, 161 [293 P.2d 40]; *People* v. *Candiotto*, 128 Cal.App.2d 347 [275 P.2d 500].)'' (*People* v. *Sanders*, 163 Cal.App.2d 132, 135 [328 P.2d 825]); and, as in the *Sanders* case, *supra*, ''the evidence had some tendency to show knowledge by appellant of the narcotic character of the substance sold. . . .'' (P. 134.) (See also *People* v. *Freytas*, 157 Cal.App.2d 706 [321 P.2d 782].)

In addition, Turner testified that between April 20 and April 25, Turner gave Casey $60 with which to buy marijuana after Casey told him he would ''score'' some for him; Casey never delivered the marijuana but later promised ''to make it good as to the $60.'' In the court below the only one who objected to this evidence was codefendant Casey; appellant interposed no objection. As to Casey, it was admissible even though the incident occurred some 15 or 20 days after the offense charged. (*People* v. *Sanders*, 163 Cal. App.2d 132 [328 P.2d 825].) As to appellant, he having remained silent on the introduction of this evidence and having failed to request an instruction limiting the same to Casey, we will not consider his claim of error for the first time on appeal. (*People* v. *Wardwell*, 167 Cal.App.2d 560 [334 P.2d 641]; *People* v. *White*, 50 Cal.2d 428 [325 P.2d 985].)

Appellant argues that the evidence does not support any claim that appellant and Casey were conspirators inasmuch as Turner testified that defendants ''were kind of playing themselves one against the other'' when he complained to them about the quality of the marijuana they sold him on April 5. No conspiracy was herein charged and none was argued to the jury. The only reference to it was made by the prosecutor in a legal argument at the bench outside the presence of the jury relative to the admission of certain statements wherein he advised the court ''. . . we are proceeding on the theory that there was a common purpose here between these two. That they were in effect, conspirators.'' Thereafter, the matter was never again mentioned. However, from evidence of defendants' close daily relationship, their mutual depleted financial condition, their conduct together in various wrongful narcotics activities, their joint efforts and collaboration in obtaining and delivering to Turner the marijuana on April 5, and their subsequent statements to Turner relative to the quality of marijuana they sold him, there arises a reasonable inference of an implied unlawful agreement between them to commit a criminal act. (*People* v. *Pacheco*,

194 Cal.App.2d 191 [14 Cal.Rptr. 840].) The evidence lends support to conspiratorial conduct between the defendants in their mutual or common purpose to sell marijuana to Turner; and the fact that after the crime was committed they might have disagreed between themselves does not here render their conduct before and during tthe commission of the offense any the less unlawful or conspiratorial in nature.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.