STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. WARREN EDWARD DENNIS, DEFENDANT-APPELLANT, AND ROMANUEL DENNIS, DEFENDANT.

Argued October 20, 1964—Decided November 30, 1964.

*Mr. Barry R. Mandelbaum* argued the cause for appellant.

*Mr. John J. Francis, Jr.,* Assistant Prosecutor, argued the cause for respondent (*Mr. Brendan T. Byrne,* County Prosecutor of Essex County, attorney; *Mr. C. William Caruso,* Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

JACOBS, J. The defendant-appellant Warren Edward Dennis and his brother Romanuel Dennis were convicted of having unlawfully conspired to violate the uniform narcotic drug law of New Jersey (*R. S.* 24:18–1 *et seq.*). Romanuel did not appeal but Warren filed notice of appeal from his conviction to the Appellate Division and we certified before argument there. Following the conviction, Warren and Romanuel filed a *habeas corpus* petition which was denied by the trial judge. No appeal was ever taken from this denial.

At the trial, the State introduced testimony by Detectives Centanni and Biunno of the Essex County Sheriff's Department, as well as other witnesses. Centanni, posing as a drug addict, first met Warren in March 1962. At that time he told Warren that he would like to buy some heroin. Warren sent him to a man named James who sold him what purported to

be a deck of heroin. A field test disclosed that the contents contained no narcotic of any kind. On April 17 Centanni, accompanied by Biunno, met Warren for the second time. He asked Warren whether there was any "stuff" (heroin) around and to make sure that it was "good stuff" this time. Warren left the side of Centanni's car, went over to his brother Romanuel who was nearby, and returned to the car with a deck of heroin which he sold to Centanni for five dollars. Centanni testified that while Warren was with his brother "something passed between the two"; he later acknowledged that he did not see the actual pass but "saw Romanuel reach his hand out and Warren reach his hand out."

On April 23 Romanuel flagged the detectives' car and asked them if they were looking for his brother. When they replied in the affirmative he asked "how many do you want" and they told him they wanted "two." He left and in a few minutes returned and delivered two decks of heroin receiving ten dollars for them. On the following day, April 24 the detectives saw both Warren and Romanuel at a street corner. Warren came over to Centanni's car and asked how many he wanted. When Centanni said he wanted one, Warren told him to go down to Hayes Street. Centanni did so and then saw Romanuel walk into a nearby tavern followed shortly by Warren. When Warren came out of the tavern he walked up to Centanni's car, handed him a deck of heroin and received five dollars. Centanni and Biunno then left the area and sent two other detectives to arrest both Warren and Romanuel. Centanni's testimony as to his meetings with Warren and Romanuel in April was corroborated by Biunno. The decks or envelopes received by Centanni from Warren on the 17th and 24th and from Romanuel on the 23rd were delivered to the Newark Police Department chemist who testified that he analyzed their contents and found that they contained heroin.

Romanuel did not testify on his own behalf but Warren did. Warren said that he first saw Centanni in March 1962 and that Centanni asked him where he could buy some "stuff." He told him he did not know, and when Centanni "kept in-

sisting," he left and later returned with a small glassine envelope in which he had placed sugar. He delivered the envelope to Centanni who paid him five dollars. Warren next met Centanni on April 17. Centanni then asked him "to buy some more heroin" and to make sure this time "he don't get burnt." Here again Warren testified that he put sugar in a glassine envelope, delivered it to Centanni, and received five dollars. On April 24 Warren met Centanni for the third time, and according to Warren's testimony, he again delivered sugar in a glassine envelope and received five dollars. When Warren was asked where he got the glassine envelopes he said that he "used to use heroin" and had them "from previous uses." Warren denied that he ever had any conversation with his brother Romanuel with reference to narcotics or their sale. He also denied that any narcotics had ever passed from his brother to him, or that he had ever sold narcotics to anyone. He admitted on direct examination that in 1955 he was convicted of unlawful possession of narcotics and on cross examination that in 1953 he was convicted of auto larceny. See *N. J. S.* 2A:81–12.

At the close of the State's case the defendants moved for acquittal and they renewed their motions at the end of the entire case. The trial court's denial of the motions was clearly proper. See *State v. Fiorello*, 36 *N. J.* 80, 86 (1961), *cert.* denied 368 *U. S.* 967, 82 *S. Ct.* 439, 7 *L. Ed. 2d* 396 (1962); *State v. Loray*, 41 *N. J.* 131, 138 (1963). There was evidence from which the jury could readily infer not only that each of the defendants had sold heroin but also that they had conspired to sell heroin as charged in the indictment. Under our law an agreement or combination between two or more persons to commit a crime constitutes an unlawful conspiracy, if (apart from certain exceptions) there has been an overt act in furtherance of the agreement or combination. *N. J. S.* 2A:98–1, 2; *State v. Carbone*, 10 *N. J.* 329, 338 (1952). The gist of the offense is the criminal agreement which may be established by inferences drawn from the circumstances. See *State v. Carbone, supra,* 10 *N. J.,* at *pp.*

341–342. Here the testimony was legally sufficient to justify a jury finding that, in selling the heroin to the detectives, Warren and his brother Romanuel had acted pursuant to an agreement between them. The described behavior of the brothers during the April meetings would lead one naturally to the conclusion that they were acting in concert; at least the jury could reasonably so find, as it did by its verdict.

 Warren now advances the contention that the verdict of the jury was against the weight of the evidence. In support of this contention he attacks conspiracy indictments generally and cites Justice Jackson's well-known concurring opinion in *Krulewitch v. United States*, 336 *U. S.* 440, 445, 69 *S. Ct.* 716, 93 *L. Ed.* 790, 795 (1949). We recognize that there have been instances where conspiracy prosecutions may have been misused (*cf. State v. General Restoration Co., Inc.*, 42 *N. J.* 366 (1964)) but this is clearly not such an instance. There were no efforts to draw in any individuals other than the two direct participants and no efforts to present evidence which was not clearly relevant to the charge against them. There were no factual complexities and the jury was explicitly charged as to the elements of the crime of conspiracy and the State's burden of establishing those elements beyond reasonable doubt. Warren suggests that the jury would have difficulty in distinguishing his substantive crime, resulting from his possession and sale of the heroin, from the criminal conspiracy charged in the indictment but we fail to see why that should be so, in view of the clarity of the testimony and the instructions. The verdict was not against the weight of the evidence. See *R. R.* 1:5–1(a); *State v. Graziani*, 60 *N. J. Super.* 1, 13–15 (*App. Div.* 1959), aff'd 31 *N. J.* 538 (1960), *cert.* denied 363 *U. S.* 830, 80 *S. Ct.* 1601, 4 *L. Ed.* 2d 1524 (1960).

 We find no merit in Warren's contention that the trial court committed reversible error in failing to instruct the jury on the defense of entrapment and in failing to suppress evidence procured by entrapment. No request to charge on entrapment was submitted to the trial judge and

no pertinent objection was made to the charge. Indeed, no issue bearing on entrapment was ever raised by the defense during the trial; it may not be raised, as sought here, for the first time on appeal. See *United States v. Countryman*, 311 *F. 2d* 189, 191 (2 *Cir.* 1962); *People v. Tostado*, 217 *Cal. App. 2d* 713, 32 *Cal. Rptr.* 178, 182 (*D. C. App.* 1963); *R. R.* 3 :7–7.

▮▮ In any event, the evidence at the trial did not present any issue as to entrapment. In *State v. Dolce*, 41 *N. J.* 422, 432 (1964), this Court dealt comprehensively with the subject, pointing out that "[e]ntrapment is concerned only with the manufacturing of crime by law enforcement officials or their agents." See *Lopez v. United States*, 373 *U. S.* 427, 434, 83 *S. Ct.* 1381, 10 *L. Ed. 2d* 462, 468 (1963); *State v. Groulx*, 203 *A. 2d* 641, 642 (*N. H. Sup. Ct.* 1964); 33 *A. L. R. 2d* 883 (1954). Though the law does not tolerate traps for unwary innocents, it does not preclude traps for unwary criminals; thus it does not prohibit police officials from affording opportunities or facilities for the commission of criminal offenses, nor does it bar them from using artifices and decoys in obtaining evidence against those engaged in criminal enterprises. See *State v. Dolce, supra,* 41 *N. J.,* at *pp.* 431–432. Mere solicitations by officers posing as private citizens and resulting in ordinary sales as between buyers and sellers have repeatedly been held not to give rise to any entrapment issues. See *People v. Harris,* 210 *Cal. App. 2d* 613, 26 *Cal. Rptr.* 850, 852 (*D. C. App.* 1963); *People v. Rucker,* 121 *Cal. App.* 361, 8 *P. 2d* 938, 939 (*D. C. App.* 1932); *Lucadamo v. United States,* 280 *F.* 653, 658 (2 *Cir.* 1922); 33 *A. L. R. 2d, supra,* at *pp.* 897–898; cf. *Napolitano v. United States,* 3 *F. 2d* 994 (1 *Cir.*), *cert.* denied 269 *U. S.* 553, 46 *S. Ct.* 18, 70 *L. Ed.* 408 (1925).

▮ At the March meeting between Centanni and Warren, when according to Warren, Centanni "kept insisting" that Warren buy some heroin for him, no narcotic of any kind was delivered. Warren acknowledged that when next they met in April, Centanni told him that he wanted him to buy some

more heroin and to make sure this time that he did not get burnt. Without persuasion, Warren then, and similarly during their next meeting, delivered envelopes and received payment. Though Warren says he delivered sugar, the evidence and the jury's finding established that it was heroin. Warren had been a user of heroin and had earlier been convicted of unlawful possession of narcotics. In the light of all of the foregoing it is clear that there had been no entrapment as defined in the precedents; the detectives did nothing legally significant beyond affording to Warren and his brother opportunities for engaging in their criminal activities.

The next contention raised by Warren relates to a request to charge which was denied by the trial court. The requested charge would have instructed the jury not to give any "greater weight" to the officers' testimony merely because they were in the employ of the State. The trial court, after pointing out that the State had the burden of establishing its allegations beyond reasonable doubt, instructed the members of the jury that they were the sole and exclusive judges of the facts, of the credibility of the witnesses, and of the weight of the testimony. It also instructed them that they should treat the testimony of the defendant as that of any other witness and that, in their consideration of the conflicting testimony, they would have to determine where the truth lies, bearing in mind the attitude and demeanor of the various witnesses on the stand, the impression they made in the giving of their testimony, the interest they had in the outcome of the case, and all other pertinent factors. Viewed in its entirety, the charge fully and fairly placed all of the pertinent issues of fact and credibility before the jury and there clearly was no prejudicial error in the refusal to grant the requested charge.

Warren contends he was denied counsel at a preliminary hearing before a magistrate on April 25, 1962 and that this deprived him of due process. The indictment was returned in July 1962 and the trial was held in October 1962. Counsel, assigned to Warren in June 1962, represented him throughout the trial. The record of the trial contains no

mention whatever of any happenings at the preliminary hearing which, under our State practice, was not a critical stage in the proceedings. See *State v. Jackson*, 43 *N. J.* 148, 165 (1964); *cf. United States ex rel. Cooper v. Reincke*, 333 *F. 2d* 608, 610–613 (2 *Cir.* 1964); *DeToro v. Pepersack*, 332 *F. 2d* 341, 343–345 (4 *Cir.* 1964); *United States ex rel. Parker v. Myers*, 233 *F. Supp.* 563, 564–566 (*E. D. Pa.* 1964). Unlike *Hamilton v. Alabama*, 368 *U. S.* 52, 82 *S. Ct.* 157, 7 *L. Ed. 2d* 114 (1961), Warren lost no defenses by virtue of the proceedings before the magistrate; unlike *White v. Maryland*, 373 *U. S.* 59, 83 *S. Ct.* 1050, 10 *L. Ed. 2d* 193 (1963), no plea of guilty was received in evidence; and unlike *Pointer v. State*, 375 *S. W. 2d* 293 (*Tex. Ct. Crim. App.* 1964), *cert.* granted 85 *S. Ct.* 88 (Oct. 13, 1964), no testimony taken before the magistrate was presented at the trial. Upon the return of the indictment, the earlier proceedings before the magistrate were superseded and Warren was thereafter entitled to an arraignment on the indictment and to a fair trial with all of the protective devices afforded by the Constitution, the statutes and the judicial decisions. He had these in full measure and he suffered no prejudice by any lack of counsel before the magistrate. See *State v. Jackson, supra*, 43 *N. J.*, at *pp.* 165–166; *State v. Smith*, 32 *N. J.* 501, 536 (1960), *cert.* denied 364 *U. S.* 936, 81 *S. Ct.* 383, 5 *L. Ed. 2d* 367 (1961); *State v. Kirkland*, 82 *N. J. Super.* 409, 412–416 (*App. Div.* 1964).

Warren contends that the conviction should be reversed because of "ineffective assigned counsel." The *habeas corpus* petition contained a similar charge but since it was merely conclusional in nature and without any supporting facts, it was insufficient on its face. See *Sanders v. United States*, 373 *U. S.* 1, 19, 83 *S. Ct.* 1068, 10 *L. Ed. 2d* 148, 163 (1963); *Rivera v. United States*, 318 *F. 2d* 606, 608 (9 *Cir.* 1963). He now asserts that his trial counsel was ineffective by reason of his failure "to develop more fully the defense of entrapment, request instructions to the jury on this point, and to move to suppress evidence which was obtained as a product

of the entrapment." This assertion is utterly without merit. Warren's main defense was that sugar rather than a narcotic had been sold to the detectives and that consequently no crime had been committed. Trial counsel presumably concluded, in the fair exercise of his judgment, that any reliance on the defense of entrapment, which assumes that a crime has been committed (61 *A. L. R. 2d* 677 (1958)), would disadvantage Warren's main defense. Furthermore, the claim of entrapment would have been legally insufficient under Warren's own testimony and its omission caused no harm to his defense.

In *State v. Bentley*, 46 *N. J. Super.* 193, 203 (*App. Div.* 1957), Judge Goldmann soundly stressed that a conviction will not be upset because of ordinary dissatisfaction, as here, with counsel's exercise of his judgment in the conduct of the trial. See also *State v. Williams*, 39 *N. J.* 471, 489, *cert.* denied 374 *U. S.* 855, 83 *S. Ct.* 1924, 10 *L. Ed. 2d* 1075 (1963). Both *Bentley* and *Williams* involved direct appeals where the allegations of incompetency were held to be clearly insufficient to support any constitutional claims of inadequate representation by assigned counsel. Such claims are being made with reckless and distressing frequency in collateral proceedings. Assigned as well as retained counsel are no more than human and may, of course, make strategy miscalculations and trial mistakes; if our adversary system is to function at all effectively, these may not be permitted to impair the binding nature of the proceedings, except in those rare instances where they are of such magnitude as to thwart the fundamental guarantee of fair trial. See *Frand v. United States*, 301 *F. 2d* 102, 103 (10 *Cir.* 1962); Waltz, "Inadequacy of Trial Defense Representation as a Ground for Post-Conviction Relief in Criminal Cases," 59 *Nw. U. L. Rev.* 289 (1964); see also *Rivera v. United States, supra,* where the court said:

"Appellant alleges that he was denied his Sixth Amendment right to effective assistance of counsel. General conclusory allegations to this effect are inadequate as a matter of law, and impose no obligation upon the district court to hold an evidentiary hearing. *Sanders v.*

*United States,* 373 *U. S.* 1, 83 *S. Ct.* 1068, 10 *L. Ed. 2d* 148 (1963). The only specifics alleged in appellant's petition were that his appointed counsel failed to raise the objections which we have considered above, and failed to request a bill of particulars. Assuming that counsel erred in the latter respect and in failing to object to the admission of evidence, more is required to constitute denial of the effective assistance of counsel guaranteed by the Sixth Amendment. This court has repeatedly said that to be sufficient the allegations must disclose a performance by counsel so incompetent as to make the trial 'a farce or a mockery of justice.' *Stanley v. United States,* 239 *F. 2d* 765, 766 (*9th Cir.* 1956). It is at least clear that 'accused persons are not guaranteed counsel who do not make mistakes' (*Moore v. United States,* 95 *U. S. App. D. C.* 92, 220 *F. 2d* 198, 199 (*D. C. Cir.* 1955)) ; and the allegations of the present petition reveal nothing more than claimed errors by trial counsel of the extent and kind common to all human efforts." 318 *F. 2d,* at *p.* 608.

 The petition for *habeas corpus* embodied several additional contentions which are of insignificant nature but may nonetheless be listed here. It alleged that the arrest of Warren and his brother was illegal. That was clearly not so. The officers had reasonable cause to believe that a high misdemeanor had been committed by the defendants and that gave them ample basis to arrest though they had not obtained a written warrant. See *State v. Smith, supra,* 32 *N. J.,* at *p.* 531; *State v. Doyle,* 42 *N. J.* 334, 345–349 (1964). Furthermore, the validity or invalidity of the arrest itself would have no bearing on the conviction here which rested entirely on legally obtained evidence. *Cf. State v. Jackson, supra,* 43 *N. J.,* at *pp.* 168–170.

 The petition alleged that the rights of the defendants were infringed by the field testing of the contents of the envelopes. The field testing afforded a basis for preliminary determination and the State's case at the trial rested not on the field tests but on the analyses testified to by the chemist of the Newark Police Department. In their field testing, the detectives acted properly and did not impair any rights of the defendants. Finally, the petition makes reference to *N. J. S.* 2A:152–3 which prohibits information where indictment will lie. The defendants were not informed against but were indicted and the statute clearly has no bearing here.

We find no error in the proceedings below and the judgment of conviction is therefore in all respects:
Affirmed.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, PROCTOR, HALL and HANEMAN—5.

*For reversal*—None.