Manchester Municipal Court,
No. 5256.

STATE *v.* JOSEPH R. GROULX.

Argued September 11, 1964.
Decided October 6, 1964.

*William Maynard*, Attorney General, *George S. Pappagianis*, Deputy Attorney General and *J. Francis Roche*, city solicitor (*Mr. Pappagianis* orally), for the State.

*William D. Tribble* and *David J. KillKelley* (*Mr. KillKelley* orally), for the defendant.

KENISON, C.J.   The evidence in this case was confined to the testimony of one Jordan, an investigator for the State Liquor Commission, who had been requested to check alleged gambling at the Jutras Post which is a licensee of the Commission.   Under the terms of the license and the regulations of the State Liquor Commission, gambling was prohibited.   The substance of Jordan's testimony, which was not modified by cross-examination, appears in the following excerpt:   "At approximately 1:15 P.M. on that

date [December 5, 1963] I walked into the Jutras Post and looked around. I went up to Joseph Groulx and asked him if he'd seen Bill Labrie. He said no, he hadn't seen him, and he said, why, do you want to put in a bet, and I said yes, I do, so he said what do you want, so I said I would like to put in a $2 daily double bet on the double in Narragansett that afternoon. So I had the Daily Record with me and I marked the two horses I wanted to play. The horses were Real Cracker in the first race and Reactor in the second. Mr. Groulx took my $2, the paper, and he went to the telephone and called a number, had a conversation and came back to me and said it's in."

This evidence established that the defendant had accepted a bet which by both statute and judicial decision was illegal. RSA 338:2; RSA 577:7; *State* v. *Mint Vending Machine*, 85 N. H. 22; *State* v. *Kachadoorian*, 104 N. H. 29, 30; 6A Corbin, Contracts, *s.* 1481 (1962). The defendant's contention that there is no violation of law because there was no proof that the horse race was actually run is without merit. "It may be proved in a prosecution for receiving bets on horse races that the bet was placed to secure evidence, but it need not be proved in such a prosecution that the race was run." 3 Underhill, Criminal Evidence, *s.* 832 (5th *ed.* 1957). The further contention that there was no bet between the investigator Jordan and the defendant because there was no "concurrence of wills" also fails. What was said in *State* v. *Del Bianco*, 96 N. H. 436, 439 is relevant here. "Judicial notice may be taken of the fact that a betting contract is consummated with greater dispatch, more informality and less meticulous detail than would be required of a municipal bond issue or a complicated corporate contract. Both are and must be definite but the former may be in shorthand expression for its well understood terms in the custom of the trade."

Entrapment is a well-recognized defense to a criminal prosecution. *State* v. *Snow*, 98 N. H. 1. However it is ironical that this judge-invented doctrine has been the subject of much confusion and that the definition, formulation and application of the doctrine may not be completely settled at this date. Note, Entrapment, 73 Harv. L. Rev. 1333 (1960). See Comment, Administration of the Affirmative Trap and the Doctrine of Entrapment: Device and Defense, 31 U. Chi. L. Rev. 137 (1963). This is readily evident from the majority, concurring and dis-

senting opinions in *Sorrells* v. *United States*, 287 U. S. 435; *Sherman* v. *United States*, 356 U. S. 369. There is some indication that the standard in determining the application of the entrapment defense is becoming less subjective and more objective. Mueller, Pieski & Ploscowe, Criminal Law in 1963 Annual Survey of American Law 41; *Lopez* v. *United States*, 373 U. S. 427. See also, Model Penal Code, *s.* 2.13 (Proposed Official Draft, 1962).

"The conduct with which the defense of entrapment is concerned is the *manufacturing* of crime by law enforcement officials and their agents. Such conduct, of course, is far different from the permissible stratagems involved in the detection and prevention of crime. Thus, before the issue of entrapment can fairly be said to have been presented in a criminal prosecution there must have been at least some showing of the kind of conduct by government agents which may well have induced the accused to commit the crime charged." *Lopez* v. *United States*, 373 U. S. 427, 434-435.

In the present case there is no evidence that the state investigator made any false representations to the defendant or appealed to his sympathy or friendship or offered him any inducements to accept the bet. *State* v. *Snow*, 98 N. H. 1, 3. There is no evidence that the defendant was "tricked into a violation of the law." *State* v. *Del Bianco*, 96 N. H. 436, 438. The state investigator did not manufacture the crime with which the defendant was charged. It is true· that he provided an opportunity for the defendant to violate the law but that is permissible crime detection for those who "are ready to commit" the violation. Model Penal Code, *s.* 2.13 (1) (b) (Proposed Official Draft, 1962). See Comment, Administration of the Affirmative Trap and the Doctrine of Entrapment: Device and Defense, 31 U. Chi. L. Rev. 137 (1963).

As evidence of inducement the defendant's counsel points to the fact that the investigator went to the Jutras Post on five occasions before the defendant accepted the bet with which he is charged in this prosecution. However the evidence also discloses that the first time the investigator attempted to place a bet with the defendant, it was not consummated because the defendant was unable to reach the party he was calling on the telephone. The second time a customer in Jutras Post accepted his bet. The third time the steward accepted his bet. On the fourth and fifth trip to the Jutras Post, the investigator observed no

gambling. The sixth trip is the offense with which the defendant is charged. This evidence shows that the investigator placed bets with the defendant and others but it does not compel a finding that the defendant was induced or lured into action that he was not ready to take.

The judge who heard the evidence could find no basis in the evidence to establish the defense of entrapment. Neither can we. The motion to dismiss the complaint on the ground of entrapment was properly denied. Here, as in *Lopez* v. *United States*, 373 U. S. 427, we can say that under any formulation or definition of the entrapment doctrine, the record fails to show any basis for its application in this case. Annot. 31 A.L.R. 2d 1212.

*Remanded.*

All concurred.