**James J. RUSH, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**Alfred J. DENNIS, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**Nos. 18285, 18286.**

United States Court of Appeals
Eighth Circuit.

Jan. 13, 1967.

Rehearing Denied Feb. 7, 1967.

---

Clayton H. Shrout, of Shrout, Hanley, Nestle & Caporale, Omaha, Neb., for appellants.

Theodore L. Richling, U. S. Atty., Omaha, Neb., for appellee. Thomas F. Dowd, Asst. U. S. Atty., Omaha, Neb., was with him on the brief.

Before MATTHES and LAY, Circuit Judges, and HARPER, District Judge.

HARPER, District Judge.

The appellants (defendants below and hereinafter referred to as defendants), James J. Rush and Alfred J. Dennis, appeal from a judgment of guilty to five counts of violating the Federal Food, Drug, and Cosmetic Act (21 U.S.C.A. § 301 et seq.).

Defendant Rush was found guilty on Counts I through V and defendant Dennis was found guilty on Counts I and IV. The case was tried before the court without a jury and we must affirm. The sole question raised by the appellants on this appeal is whether the trial judge (Van Pelt, J.) should have ruled, as a matter of law, that the defendants were entitled to an acquittal based upon unlawful entrapment.

On April 24, 1961, the United States Attorney filed an information in five counts against the defendants, James J. Rush, an individual doing business as Ralston Pharmacy, and Alfred Dennis, an individual. Defendant Dennis was only charged in Counts I and IV.

The defendants pleaded not guilty to all of the counts, and the case went to trial before a jury (Robinson, J.). The jury returned a verdict of guilty against both of the defendants on all five counts. The defendants subsequently filed a motion for Judgment of Acquittal or in the Alternative, Motion for New Trial. Judge Robinson granted a new trial and transferred the case to Judge Van Pelt, where the defendants waived a jury trial.

At the second trial, the one from which this appeal is taken, it was stipulated that all exhibits and the transcript of testimony from the first trial (with certain deletions and corrections) would be admitted in evidence, and some additional testimony of the defendants was heard.

Judge Van Pelt entered a Memorandum and Order in which he found the defendants guilty, summarizing the evidence as to each count as follows:

"*Count I.* This count charges that on April 22, 1960, the defendant Rush, as proprietor, and the defendant Dennis, as an employee, dispensed to Clifford T. Bryant, an inspector for the United States Food and Drug Administration, dexedrine sulfate tablets as an unauthorized refill of a prescription. The evidence sustains a finding in conformity with this charge. On April 19, 1960, inspector Bryant presented a prescription for dexedrine sulfate tablets to the defendant Dennis, which was accordingly filled without incident. Thereafter, on April 22, Bryant returned and presented the vial to Dennis for refilling which was also accomplished at that time. Dennis testified that Bryant told him that his physician had asked that the prescription be refilled and that he, Dennis, relied upon this statement. The tablets issued on the 19th, if taken according to directions, would have lasted 24 days. Under both versions the evidence establishes a violation of the applicable statutes.

"*Count II.* By this count it is alleged that on or about April 23, 1960, the defendant Rush dispensed to Thomas M. Rice, another Food and Drug Administration inspector, an unauthorized refill of a chloral hydrate prescription. The evidence would indicate, and the court so finds, that agent

Rice took a prescription for chloral hydrate to the Ralston Pharmacy on March 21, 1960, where it was promptly filled by Mr. Rush. On April 23 Rice returned and asked for a double refill which was furnished, according to Rice, without further comment by either party. Rush testified, in substance, that Rice asserted that the prescribing physician was desirous that the refill be made as ordered. It is clear, however, that the double refill was dispensed without a physician's authorization being obtained.

"*Count III.* The allegations contained in this count are directed against Mr. Rush and assert that on April 23, 1960, he sold dexedrine sulfate without a prescription to agent Rice. Rice's version of the sale was simply that he asked for two dozen dexedrine tablets for his wife and that Rush furnished the same without further comment. Rush testified that agent Rice represented that his wife had a prescription at their home which was ten miles away and that they were leaving town and 'just wanted a few to hold him until he got back to town.' Again, however, it is altogether clear that the defendant Rush dispensed this drug without a physician's prescription.

"*Count IV.* In Count IV it is alleged that on or about May 2, 1960, the defendant Dennis as employee and the defendant Rush as proprietor sold to agent Bryant a refill prescription for dexedrine sulfate without authorization. The only difference in testimony regarding this count is what was said by Bryant. Bryant himself claims to have merely asked for a double refill so he would not have to come back so often, whereas Dennis testified that Bryant represented that the prescribing physician wanted continuation of the medication and further, that he was going out of town for a while which necessitated the request for a double dosage. Under either interpretation there was an unauthorized

refill in violation of the applicable statutes, and the court so finds.

"*Count V.* The final count alleges a refill of dexedrine sulfate by Mr. Rush for Mr. Bryant on May 5, 1960. Bryant testified that he handed the prescription vial to Rush and said he would like to have it refilled. Rush reportedly said 'All right,' and the refill was made. In regard to this transaction also, Rush testified that Bryant told him that the doctor 'said to keep on taking them.' Again, however, the facts establish a statutory violation."

Judge Van Pelt then considered and rejected the defense of unlawful entrapment.

The appellants' only contention here is that, as a matter of law, they were entitled to a finding of unlawful entrapment. In support of their contention the appellants state:

"The law recognizes two kinds of entrapment, unlawful entrapment and lawful entrapment. Where a person has no previous intent or purpose to violate the law, but is induced or persuaded by the law enforcement officers to commit a crime, he is entitled to the defense of unlawful entrapment, and the government then has the burden of proving lawful entrapment."

In the very recent case of Rogers v. United States, 367 F.2d 998 (Eighth Circuit, November 8, 1966), this court considered a similar contention. We repeat the law as expressed in that case, l. c. 1001:

"Unlawful entrapment is the solicitation of an otherwise innocent person to commit a crime solely for the purpose of prosecution. It arises where the criminal purpose or design originated in the minds of government officials and such criminal purpose or design is implanted in the mind of an otherwise innocent person, the object being his prosecution. In the much-quoted case of Sorrells v. United States, 1932, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, [86 A.L.R. 249,] the Supreme Court held that under the evi-

dence in that case the question of entrapment should have been submitted to the jury. Mr. Chief Justice Hughes, speaking for the court, stated at pages 441–442 of 287 U.S., pages 212–213 of 53 S.Ct.:

"'It is well settled that the fact that officers or employees of the government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises. [Citing cases.] The appropriate object of this permitted activity, frequently essential to the enforcement of the law, is to reveal the criminal design; to expose the illicit traffic, the prohibited publication, the fraudulent use of the mails, the illegal conspiracy, or other offenses, and thus to disclose the would-be violators of the law. A different question is presented when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense ·and induce its commission in order that they may prosecute.'"

The testimony in this case indicates that the government agents did not simply seek out the defendants by chance to see if they could get them to commit a crime, but that Thomas M. Rice, an inspector for the Federal Food and Drug Administration, who was stationed in Omaha, Nebraska, received a complaint in early 1960 concerning the defendants' activities, following which he was authorized by his superiors in the Kansas City office to investigate the Ralston Pharmacy. Pursuant to the assignment Agents Rice and Bryant secured · prescriptions from Dr. John Dewey for the medication more particularly described in Counts I, II, IV and V, which prescriptions were filled at the Ralston Pharmacy, and thereafter refilled without authority from the doctor. The medication more particularly described in Count III was secured from the defendant Rush without the benefit of a prescription, although a prescription was required. The testimony further disclosed that the defendants were quite ready and willing to refill the prescriptions described in Counts I, II, IV and V without authorization from the doctor, and to sell the drugs set out in Count III without the benefit of a prescription, and needed no coaxing from Agents Rice or Bryant who were involved in the purchases. As Judge Van Pelt so aptly stated in his opinion, "Even by the defendants' testimony there was no inordinate prevalence or inducement, but merely assertions that the prescribing physician desired the continuation of the medication."

■ Unless it can be decided as a matter of law, the issue of whether a defendant has been unlawfully entrapped is for the jury as part of its function of determining the guilt or innocence of the accused. Sherman v. United States, 356 U.S. 369, 377, 78 S.Ct. 819, 2 L.Ed.2d 848.

■ In the light of the evidence in this case we cannot say that the defense of unlawful entrapment was established as a matter of law, and, therefore, the question of whether the defendants were unlawfully entrapped by Agents Rice and Bryant was one of fact for the judge, who, in the absence of a jury, was performing their function. See Masciale v. United States, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859, and also Rogers v. United States, supra.

Judgment affirmed in accordance with this opinion.