Rockingham,
No. 5941.

STATE *v.* JAMES CAMPBELL.

April 30, 1970.

*William F. Cann,* Deputy Attorney General, *Thomas B. Wingate,* Assistant Attorney General, *Donald Stever,* Attorney (*Mr. Stever* orally), for the State.

*Harkaway, Gall & Shapiro* (*Mr. Aaron A. Harkaway* orally), for the defendant.

GRIFFITH, J.   The defendant in this case was convicted of four separate sales of narcotic drugs. A sale of marijuana and one of LSD on November 7, 1968, and sales of marijuana on November 16, 1968 and November 23, 1968. Defendant's exceptions were reserved and transferred by the Trial Court (*Keller,* J.).

The defendant relies upon two exceptions here. First, he argues that he was entitled to an acquittal because it must be found as a matter of law that he was entrapped and second that RSA 318-A:21 is unconstitutional in that it provides for a mandatory sentence and forbids the trial court to suspend any part of the sentence.

Two state troopers, who were acting as undercover agents,

testified that they first went to the trailer of the defendant in Salem on the night of November 6, 1968. The troopers were dressed in dungarees and shirts and both had long hair and beards. They stated that they approached the defendant on information from the Salem police that he was suspected of selling narcotics. Upon admission to the trailer they told the defendant that they had been told by a man named Silver in Lowell that they could obtain marijuana from the defendant. The defendant stated that he did not have any but offered to take them to Lowell where he said they could obtain some. When they told him that they preferred to take delivery in New Hampshire he agreed to get some and to also attempt to get some LSD. Because they were unknown to the defendant, it was finally agreed that they would make a deposit of ten dollars on the purchase. The next night they returned and the defendant sold them two ounces of mari-juana and four LSD tablets for a total purchase price of fifty-two dollars.

The troopers testified that the defendant gave them his tele-phone number so that they could call in future orders and that the deliveries of November 16 and November 23 were as a result of telephone orders. They further testified that they were in the trailer some fifteen or twenty minutes the first visit, that on the second visit the defendant gave them some amphetamine tablets to try, and that on the final delivery of November 23 he pro-duced double the amount of marijuana they had ordered and suggested they take the excess amount to sell. The defendant was arrested at the time of the delivery of the final order on Novem-ber 23. The troopers testified that they did not know whether or not the defendant made any profit on the sales.

The defendant's wife was present during each visit of the officers to the trailer. Her testimony and that of the defendant differed from the officers in some respects. Defendant and his wife testi-fied that the officers were at the trailer about an hour on the first visit and that they appealed to the defendant to obtain drugs on the basis of their mutual friendship with Silver. That the de-fendant offered to tell them where to go in Lowell but they ex-pressed fear of the Lowell police and the defendant reluctantly and after considerable urging agreed to obtain the drugs for them as a favor to his friend Silver. The defendant stated that he made no profit on any of the sales. He further testified that he did

not give them the amphetamine pills but that they took them without his knowledge. He testified that the pills were diet pills he took and had obtained from a doctor.

The trial court without objection by the defendant submitted the issue of entrapment to the jury. The defendant does not object to the instructions as given but claims that on these facts the trial court should have dismissed the prosecution.

The defense of entrapment is a twentieth century American doctrine which probably evolved as a result of the increasing use of informers and undercover agents in the detection of crimes particularly in the liquor and narcotics field. *See* Annot., 55 A.L.R.2d 1322; Annot., 33 A.L.R.2d 883. Courts were shocked by cases in which the crime appeared to be created by the very officers charged with preventing crime. *See Woo Wai* v. *United States,* 223 F. 412; *State* v. *Neely,* 90 Mont. 199, 300 P. 561. The rule was judicially created to prevent the conviction of innocent persons enticed by government agents to commit a crime for the agents to prosecute. Mikell, The Doctrine of Entrapment in the Federal Courts, 90 U. Pa. L. Rev. 245. Various reasons have been assigned for the defense. *Sorrells* v. *United States,* 287 U.S. 435, 77 L. Ed. 413, 53 S. Ct. 210; *Sherman* v. *United States,* 356 U.S. 369, 2 L. Ed. 2d 848, 78 S. Ct. 819. Learned Hand expressed it thus: "The whole doctrine derives from a spontaneous moral revulsion against using the powers of government to beguile innocent, though ductile, persons into lapses which they might otherwise resist." *United States* v. *Becker,* 62 F.2d 1007, 1009.

Whatever the basis for the rule it has been almost universally accepted and it appears that except for Tennessee all states have now adopted it either by court decision or by statute. *See* 45 Texas. L. Rev. 578; Annot., 55 A.L.R.2d 1322; Annot., 33 A.L.R.2d 883, *supra.* The possibility that denial of the defense might constitute denial of due process has not been foreclosed. *See United States ex rel Hall* v. *Illinois,* 329 F.2d 354; Comment 1964 U. of Ill. L. Forum 821.

The defense of entrapment was first recognized in this state in *State* v. *Del Bianco,* 96 N.H. 436, 78 A.2d 519 and is referred to as "well-recognized" in *State* v. *Groulx,* 106 N.H. 44, 46, 203 A.2d 641, 642. The later case points out that the doctrine "has been the subject of much confusion and that the

definition, formulation and application of the doctrine may not be completely settled at this date. " Chief Justice Kenison authored both of the above opinions and was Chairman of the Commission for the Revision of the Criminal Laws. Their report filed in April 1969 recommended the following statutory provision: "571:5 Entrapment. It is an affirmative defense that the actor committed the offense because he was induced or encouraged to do so by a law enforcement official or by a person acting in cooperation with a law enforcement official, for the purpose of obtaining evidence against him and when the methods used to obtain such evidence were such as to create a substantial risk that the offense would be committed by a person not otherwise disposed to commit it. However, conduct merely affording a person an opportunity to commit an offense does not constitute entrapment. " Report of Commission to Recommend Codification of Criminal Laws, April 1969, at 14.

The comment on this proposed section states that it codifies existing law on the subject. It points out that neither the motive of the officer to test the honesty of the defendant nor opportunity to commit the offense, without more, is entrapment. "What has been troublesome is the question of how to measure the extra ingredient that does give rise to entrapment. This section proposes that the test be the risk that an honest man would respond to the inducement or opportunity by committing the offense. This is not an easy to apply mechanical rule but it does serve to identify the issue that is involved. " *Id.* Comment.

Ordinarily, if the evidence presents an issue of entrapment it is a question of fact for the jury to determine. 1 Wharton, Criminal Law and Procedure *s.* 132 ( supp. ); *United States* v. *Baker,* 373 F.2d 28; *Rush* v. *United States,* 370 F.2d 520; *United States* v. *Landry,* 257 F.2d 425. The court can find entrapment as a matter of law only where the undisputed testimony and required inferences compel a finding that the defendant was lured by the officers into an action he was not predisposed to take. *Cline* v. *United States,* 20 F.2d 494; *Morei* v. *United States,* 127 F.2d 827; *Sherman* v. *United States,* 356 U.S. 369, 2 L. Ed. 2d 848, 78 S. Ct. 819. The evidence in this case did not compel such a finding and would support a finding that the defendant was ready to commit the crime and that the troopers only furnished him the opportunity. *State* v. *Groulx, supra* at 48.

In oral argument counsel for the defendant suggested that the issue of entrapment should never be submitted to a jury but always be determined by the trial court, since a jury would be prejudiced by the defendant's necessary admission of the crime when the defense is raised. This in essence was the position of the minority of the Supreme Court in both *Sorrells* v. *United States,* 287 U.S. 435, 77 L. Ed. 413, 53 S. Ct. 210, and *Sherman* v. *United States,* 356 U.S. 367, 378, 2 L. Ed. 2d 848, 854, 78 S. Ct. 819, 823. We agree with Chief Justice Warren's statement in the *Sherman* case that adoption of this rule might create more problems than it would solve. Refusal to submit this issue to the jury poses some constitutional problems due to the defendant's right to trial by jury on all issues. 74 Yale L.J. 942, 953.

The defendant challenges the constitutionality of RSA 318-A:21 which established a mandatory minimum sentence of five years for the offense charged and prohibited any suspension of the sentence by the trial court. In *State* v. *Berge et al,* 109 N.H. 570, 258 A.2d 489 involving a similar challenge to this statute we held the question moot since Laws 1969, ch. 421 repealed the mandatory requirements of RSA 318-A:21 and made it applicable to any offense committed before the repeal if sentence were pronounced after the repeal. *See also State* v. *Schena,* 110 N.H. 73, 260 A.2d 93.

In the *Berge* case imposition of the sentence had been stayed pending the appeal and in the present case the mandatory sentence was imposed with its execution stayed. The recent case of *State* v. *Thomson,* 110 N.H. 190, 263 A.2d 675 permits the trial court to reconsider the sentence in the present case. Accordingly we decline to consider the constitutional question here presented since further action of the trial court may render the question moot.

*Exceptions overruled.*

All concurred.