NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
Case No. 2022-0643
Citation: State v. Zuzelo, 2024 N.H. 14

THE STATE OF NEW HAMPSHIRE

v.

DAVID ZUZELO

Argued: October 17, 2023
Opinion Issued: April 3, 2024

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Audriana Mekula, assistant attorney general, on the brief and orally), for the State.

Friedman & Bresaw, PLLC, of Meredith (John J. Bresaw on the brief and orally), for the defendant.

DONOVAN, J.

[¶1] The defendant, David Zuzelo, appeals his convictions, following a jury trial in the Superior Court (Ruoff, J.), on one count of pattern aggravated felonious sexual assault (AFSA) and one count of AFSA alleging a single act of penetration. See RSA 632-A:2, III (Supp. 2023); RSA 632-A:2, I(l) (Supp. 2023).

He argues that the trial court erred by: (1) denying his motion to dismiss both AFSA charges based upon the insufficiency of the evidence; and (2) denying his motion to preclude the admission of evidence pertaining to the complainant's "alleged behavioral changes and/or characteristics." We conclude that, although there was sufficient evidence to support the single-act penetration AFSA conviction, there was insufficient evidence to support the pattern AFSA conviction. We further conclude that the trial court erred in admitting evidence of the complainant's alleged behavioral changes and characteristics and that the error was not harmless beyond a reasonable doubt. Accordingly, we reverse the defendant's pattern AFSA conviction and reverse and remand his single-act penetration AFSA conviction.

## I.  Facts

[¶2] The jury could have found, or the record otherwise supports, the following facts. The defendant dated and subsequently cohabitated with the complainant's grandmother beginning in or about 2000, and they married in 2008. The complainant and her sister often visited the defendant and their grandmother during their childhood. Although the complainant and her sister usually accompanied each other when they visited their grandmother and the defendant, the complainant testified that she occasionally spent time at her grandmother's residence without her sister when her sister began volunteering at a nearby horse farm. Although the defendant and the grandmother regularly visited with the complainant's family throughout her childhood, the defendant and the grandmother moved to New Mexico when the complainant was in high school, and they had little contact with the complainant and her family thereafter.

[¶3] According to the complainant, who was twenty-four years old when the case was tried, the defendant sexually assaulted her multiple times at her grandmother's residence during the summer of 2006 when she was eight years old. The complainant alleged that the first assault occurred one afternoon after she had gone swimming in her grandmother's pool. The complainant alleged that she was "on the couch with [the defendant] and [her] legs were across his lap because [she] was asleep." She reported that when she woke up, the defendant was rubbing her clitoris over her clothing. She "pretended to stay asleep," estimating that the touching lasted "five minutes or so," and testified that the defendant stopped when she experienced an orgasm.

[¶4] The complainant also reported that a second assault occurred on the same couch "[d]ays to weeks" later. She explained that "[t]his time was a little bit different than the first occasion" because the defendant pulled "the lower half of [her] clothing off to the side a little bit" and "penetrated [her] further into [her] inner labia." According to the complainant, the defendant subsequently touched her genitalia while she was on the couch "more than 5, but no more than 15 to 20" times, and these sexual assaults occurred during the same

2

summer.  However, other than the two incidents on the couch already described, the complainant could not remember any specific details of the other sexual assaults during which the defendant allegedly touched her genitalia.

[¶5] The complainant did not disclose her allegations until she was sixteen years old, after her grandmother and the defendant had moved to New Mexico.  After disclosing the alleged sexual assaults to her friend and then to her parents, the complainant reported the allegations to the police when her boyfriend informed her that the statute of limitations applicable to child sexual abuse had not expired.

[¶6] As relevant to this appeal, the defendant was indicted on one count of pattern AFSA and one count of AFSA.  The pattern AFSA indictment alleged that the defendant engaged in a pattern of sexual assault by touching the complainant's genitalia.  See RSA 632-A:2, III.  The single-instance AFSA indictment alleged that the defendant penetrated the complainant by inserting his finger into her genital opening.  See RSA 632-A:2, I(l).[1]

[¶7] Before trial, the State indicated that it intended to offer evidence that, in the years following the alleged assaults, the complainant experienced several behavioral changes.  Specifically, the State sought to admit evidence that the complainant began experiencing nightmares, weight gain, and angry outbursts and that, on one occasion, she plucked out her eyelashes.  The State argued that this evidence was admissible to explain the complainant's delayed disclosure.  The defendant filed a motion in limine to exclude "evidence of [the complainant's] alleged behavioral changes and/or characteristics," arguing that this evidence was irrelevant and unfairly prejudicial.  The trial court denied the defendant's motion, ruling that the complainant could testify about her behaviors and why they occurred, and that the other witnesses could testify about their observations but could not "offer an opinion about what caused these behaviors."  The defendant moved to reconsider, arguing that the State's discovery indicated that the complainant delayed disclosing the alleged assaults due to her "fear of breaking up her family, breaking up her grandmother's marriage, losing her close relationship with her grandmother, and emotional feelings."  The trial court denied the motion.

[¶8] At trial, the complainant admitted that, although she remembered the defendant touching her clitoris on two occasions on the couch at her grandmother's residence, she could not recall the specific details of any of the

---

[1] In addition to the two indictments challenged on appeal, the State also indicted the defendant on another pattern AFSA charge alleging that he engaged in a pattern of sexual assault by kissing the complainant on her mouth, see RSA 632-A:2, III (Supp. 2023), and a felonious sexual assault charge alleging that the defendant touched the complainant's breasts with his hand, see RSA 632-A:3, III (Supp. 2023).  The jury acquitted the defendant of both charges.

3

other assaults other than one occasion when the defendant allegedly touched her breasts when she was swimming in the pool. The complainant nonetheless testified that the defendant touched her genitalia frequently during the summer of 2006, and she estimated that these assaults occurred more than five but fewer than fifteen to twenty additional times. She testified that the sexual assaults were "still happening" until Thanksgiving 2006. Although she admitted to having "memory issues," the complainant averred that she was "100 percent sure that [she] was assaulted multiple times" by the defendant.

[¶9] The complainant testified that she did not immediately disclose the alleged assaults because she did not think anyone would believe her when she was younger, and she had no idea "what was even happening at such a young age." She testified that she also did not disclose the assaults because she did not want to break up her grandmother's marriage or the family. As she got older, the complainant "felt like it was too late" to disclose the abuse "because it had already been so many years."

[¶10] The complainant also described certain behavioral changes that she experienced during her adolescence. She testified that she had nightmares "pretty frequently" when she was younger, although she could not recall whether they occurred during the same summer when the assaults allegedly occurred or afterwards. She further testified that, when she was in middle school, she began "not being nice to . . . other people" and experienced anxiety, depression, and "negative feelings." The complainant's mother, sister, and father also testified about the complainant's adolescent behavioral changes that began after the assaults allegedly occurred. Specifically, these witnesses testified about the complainant's weight gain; angry outbursts; that, on one occasion, she plucked out her eyelashes; and that she "kept to herself."

[¶11] The complainant's grandmother testified that although the complainant and her sister visited her when they were young, she could not recall the complainant ever being alone with the defendant. She also explained that the complainant and her sister occasionally spent the night at her house, but they never came over to visit just "for the day."

[¶12] After the State rested, the defendant moved to dismiss the charges, arguing that the State had failed to introduce sufficient evidence supporting either the pattern AFSA charge involving touching of the complainant's genitalia or the AFSA charge alleging penetration. The trial court denied the motion. The defendant testified and denied inappropriately touching or kissing the complainant at any time. Nonetheless, the jury convicted him on one count of AFSA for engaging in a pattern of sexual assault involving touching of the complainant's genitalia and one count of AFSA involving sexual penetration. This appeal followed.

4

## II.  Analysis

### A.  Sufficiency of the Evidence

[¶13] On appeal, the defendant argues that the trial court erred when it denied his motion to dismiss the AFSA indictments for insufficiency of the evidence.  A challenge to the sufficiency of the evidence raises a claim of legal error; therefore, our standard of review is de novo.  State v. Folley, 172 N.H. 760, 766 (2020).  When considering such a challenge, we objectively review the entire record, including any evidence presented by the defendant, to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, considering all the evidence and all reasonable inferences drawn therefrom in the light most favorable to the State. Id.  We examine each evidentiary item in the context of all the evidence, and not in isolation.  State v. Saintil-Brown, 172 N.H. 110, 117 (2019).  Because the defendant chose to present a case after unsuccessfully moving to dismiss, we review the entire trial record to make the requisite determination.  State v. Ericson, 159 N.H. 379, 385 (2009).

#### 1.  Pattern AFSA Charge

[¶14] The defendant argues that the complainant's testimony failed to establish beyond a reasonable doubt a pattern of sexual assault by touching the complainant's genitalia on more than one occasion over a two-month period.  He asserts that the State was unable to establish when the sexual assaults began and in which months they occurred.  He contends that because the complainant did not testify to any specific dates or establish any concrete time frames as to when the sexual assaults ended, no reasonable trier of fact could find beyond a reasonable doubt that the sexual assaults occurred over a period of two months or more.  We agree.

[¶15] The pattern AFSA indictment specifically alleged that the defendant engaged in a pattern of sexual assault "by intentionally touching [the complainant's] genitalia with his hand on more than one occasion, directly, through clothing or otherwise."  To convict the defendant of committing "a pattern of sexual assault," RSA 632-A:2, III, the State had to prove beyond a reasonable doubt that, inter alia, the defendant committed "more than one act under RSA 632-A:2 or RSA 632-A:3, or both, upon the same victim over a period of 2 months or more and within a period of 5 years," RSA 632-A:1, I-c (Supp. 2023).

[¶16] At trial, the complainant testified that the defendant first sexually assaulted her in either July or August 2006 but that the assaults could have begun as late as September of that year.  She explained that the time frame began "more so [in] the middle of the summer, when it's really hot out."  She claimed that the sexual assaults "happened a lot of the summertime" in 2006

5

when she was eight years old. However, the complainant provided specific details of only two assaults when the defendant allegedly touched her genitalia, both of which occurred on the couch at her grandmother's residence. She testified that these two assaults were separated by "[d]ays to weeks," and that they were "close together within the months between the summertime and the fall time." However, she later clarified that the two assaults on the couch occurred "within a week" of one another.

[¶17] In addition to recalling the details of the two sexual assaults on the couch, the complainant testified that, during the summer of 2006, the "touching on [her] clitoris" happened "[m]ore than twice," estimating that it occurred "more than 5, but no more than 15 to 20" times. When asked how she knew that the assaults happened more than twice, the complainant explained that "[j]ust experiencing it alone was -- was enough for [her] to know that it was more than one time and more than twice, even."

[¶18] Although the complainant was unable to recall when exactly these other alleged assaults occurred, she testified that they occurred mostly during the summertime and may have lasted until Thanksgiving of either 2006 or 2008. The complainant testified that the sexual assaults lasted until the "[f]all, maybe," and she agreed that "it ended in 2006 because of this 911 call" she made on Thanksgiving in an effort to avoid having to go to her grandmother's residence. She recalled that the sexual assaults were "still happening at that point, up until that point." However, on cross-examination, the complainant also testified that she was "not sure when they stopped" because there "was a lot of trauma that [she] had to go through."

[¶19] The complainant did not remember any details of these other alleged assaults and the details that she did provide were inconsistent. For example, the complainant testified repeatedly that the other sexual assaults occurred in the same manner as the two specific incidents on the couch that involved touching of her clitoris, and she testified that the assaults all occurred on the couch at her grandmother's residence. However, the complainant then denied that there was "another time on the couch where something else happened," and she testified that the other assaults did not involve the defendant touching her with his hands.

[¶20] We note that the essential culpable act under the pattern AFSA statute, RSA 632-A:2, III, is the pattern itself, not the specific assaults that comprise it, and the individual acts of sexual contact underlying the pattern do not constitute elements of the pattern crime. Ericson, 159 N.H. at 385. Although the State was not required to establish the underlying acts as elements of the pattern AFSA charge, it was required to establish beyond a reasonable doubt that the defendant touched the complainant's genitalia on more than one occasion over the period defined by statute. See RSA 632-A:1, I-c. Given that the complainant specifically remembered only the two assaults

6

that allegedly occurred on the couch, which she testified occurred within a week of one another, and the alleged assault that occurred in the pool, which did not involve the touching of her genitalia, the jury would have had to find that the defendant touched the complainant's genitalia on at least one additional occasion. Evidence of two assaults separated by less than one week cannot alone sustain a pattern AFSA conviction because a "pattern of sexual assault" for purposes of RSA 632-A:2, III requires more than one assault "over a period of 2 months or more and within a period of 5 years." RSA 632-A:1, I-c (emphasis added). Although the complainant testified that the defendant touched her clitoris more than twice, she did not specify when those assaults occurred in relation to the two assaults that she remembered in detail.

[¶21] Despite the complainant's testimony that the assaults occurred through November of either 2006 or 2008, she could not recall any details regarding those assaults, including whether they involved touching of her genitalia. Even if we assume that the jury credited the complainant's testimony that the defendant assaulted her multiple times from July or August until Thanksgiving 2006, the State failed to establish that the defendant committed the type of assault alleged in the indictment — touching of the complainant's genitalia with his hand — over a period of two months or more.

[¶22] Without more information explaining when those other assaults occurred and whether they involved touching of the complainant's genitalia, we cannot conclude that a rational juror could have found, beyond a reasonable doubt and without assuming facts not in evidence, that the defendant sexually assaulted the complainant by touching her genitalia over a period of two months or more. See State v. Chamberlain, 137 N.H. 414, 417 (1993) ("Even if the child's representation could be interpreted so broadly as to imply that the defendant touched the internal sides of her genital opening, this mere implication, in light of the child's entire testimony, does not permit a rational finding of guilt beyond a reasonable doubt."). Therefore, we hold that the trial court erred in denying the defendant's motion to dismiss the pattern AFSA indictment and we reverse the defendant's conviction.

2. AFSA Charge Alleging Penetration

[¶23] Next, the defendant argues that the State failed to submit sufficient evidence that the defendant sexually penetrated the complainant. Under RSA 632-A:2 (Supp. 2023), "[a] person is guilty of the felony of aggravated felonious sexual assault if such person engages in sexual penetration with another person . . . [w]hen the victim is less than 13 years of age." RSA 632-A:2, I(l). "Sexual penetration" is defined as "[a]ny intrusion, however slight, of any part of the actor's body, including emissions, or any object manipulated by the actor into genital or anal openings of the victim's body." RSA 632-A:1, V(a)(5) (Supp. 2023). "Genital openings" is defined as "the internal or external genitalia

including, but not limited to, the vagina, labia majora, labia minora, vulva, urethra or perineum." RSA 632-A:1, I-b (Supp. 2023).

[¶24] We reject the defendant's argument that the complainant's testimony "failed to establish intrusion into the genital opening." The complainant testified that the defendant penetrated her labia, which is part of the "genital openings" as defined by RSA 632-A:1, I-b. Specifically, she testified that, when she woke up on the couch, the defendant was touching her and that "he had removed [the] lower half of [her] clothing off to the side a little bit, and like, penetrated [her] further into [her] inner labia." She further testified as follows:

Q Now, is it your testimony today that this second time, that [the defendant] penetrated you?

A Are you -- can you maybe rephrase that?

Q Did [the defendant] put his fingers inside of your vagina?

A Yes.

[¶25] Because the complainant testified that the defendant put his fingers inside of her vagina, which is an "intrusion . . . by the actor into genital . . . openings of the complainant's body," RSA 632-A:1, V(a)(5), we conclude that the State presented sufficient evidence that the defendant penetrated the complainant. See RSA 632-A:6, I (Supp. 2023) ("The testimony of the victim shall not be required to be corroborated in prosecutions under this chapter."). Therefore, viewing the evidence in the light most favorable to the State, we conclude that the defendant has failed to establish that no rational trier of fact could have found that the defendant sexually penetrated the complainant. See Saintil-Brown, 172 N.H. at 117; RSA 632-A:2, I(l).

B. Evidence of the Complainant's Alleged Behavioral Changes and/or Characteristics

[¶26] Given our conclusion that there was sufficient evidence to support the defendant's AFSA conviction for sexually penetrating the complainant, we next address the defendant's argument that the trial court erred in admitting evidence of the complainant's "alleged behavioral changes and/or characteristics." According to the defendant, the admission of this evidence violated New Hampshire Rules of Evidence 401, 402, and 403, as well as his state and federal constitutional rights. The State responds that the trial court's decision is sustainable because this evidence corroborated the complainant's timeline and her state of mind following the alleged abuse, and because the evidence allowed the jury to draw its own conclusions.

8

[¶27] We review the trial court's evidentiary rulings for an unsustainable exercise of discretion and reverse only if the court's decision was clearly untenable or unreasonable to the prejudice of the defendant's case. State v. Clark, 174 N.H. 586, 589 (2021). We consider whether the record establishes an objective basis sufficient to sustain the discretionary decision made. Id. The defendant bears the burden of demonstrating that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. Id. At issue in the instant appeal is the admissibility of testimony from the complainant and her mother, sister, and father that described the complainant's behavioral changes and characteristics — specifically, her nightmares, weight gain, eyelash plucking, and anger — following the alleged assaults.

[¶28] In his motion in limine, the defendant argued that evidence of the complainant's nightmares, weight gain, eyelash plucking, and anger was irrelevant and inadmissible, because, absent expert testimony regarding common behavioral characteristics exhibited by child sexual abuse victims, the evidence would be offered only to suggest that the complainant's behavioral changes were the result of sexual abuse. He argued that the admission of this evidence would "essentially require the jury to assume the role of the expert and to evaluate the behavior and determine whether it is consistent or inconsistent with a child who was a victim of sexual assault." The defendant further argued that, even if the evidence was relevant, it should nonetheless be excluded under Rule 403 because its probative value was substantially outweighed by the danger of unfair prejudice. The State, on the other hand, argued that this evidence was relevant to explain the complainant's delayed disclosure and her state of mind following the alleged abuse.

[¶29] The trial court denied the defendant's motion in limine and ruled that the proffered evidence was highly probative to explain the complainant's delayed disclosure and was related to the jury's assessment of the complainant's credibility. The court determined that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. The court noted that "[t]he State is not seeking to admit the evidence to prove that the constellation of 'change[s] in behaviors' was caused by the sexual assaults," but, rather, that it would be offered to inform the jury about the complainant's behaviors, relationships, mental state, and decision not to immediately disclose the alleged abuse. The trial court explained that "[s]uch evidence to proactively address 'delayed disclosures' has been admissible for decades."

[¶30] At trial, the complainant did not testify about her weight gain, eyelash plucking, or anger. The complainant explained that she felt like a "problem child" and began "not being nice to . . . other people" when she was in middle school. She also testified that she frequently had nightmares when she was younger, although she could not recall whether the nightmares occurred

when the defendant allegedly began assaulting her. However, the complainant's testimony failed to establish any connection between her behavioral changes and characteristics and her delayed disclosure. In contrast to the State's argument opposing the defendant's motion in limine, the complainant testified that she felt uncomfortable telling anyone about the allegations because she felt like a "problem child" and did not think her parents would believe her. She also explained that she did not disclose the alleged abuse because she did not want to break up her family and, specifically, her grandmother's marriage.

[¶31] After the complainant's testimony concluded, the defendant renewed his objection to the introduction of evidence of the complainant's alleged behavioral changes and characteristics, arguing that, given the lack of foundation or testimony given by the complainant, testimony by additional witnesses on this subject was not relevant under Rule 401 to explain her delayed disclosure. The trial court maintained its ruling that the evidence was relevant, although it observed "that [the] conditional relevance piece is not as strong as it once was because [the complainant] didn't testify about those types of things. And she may not have known why she did that or why the weight gain occurred or anything like that."

[¶32] The State then called the complainant's mother, sister, and father as witnesses. The complainant's family members testified about her alleged behavioral changes and characteristics, specifically recalling her weight gain, eyelash plucking, and anger. The complainant's mother testified that the complainant's personality "seemed to start to change and continued to change as she grew older," explaining that, "[a]round the age of 9, 10, [the complainant] started to put on an extreme amount of weight, almost doubling in size" and that "one morning, . . . she had plucked all of her eyelashes out." The complainant's sister testified that, around age eight, the complainant changed, had "[a]ngry outbursts," was "short toned," and "kept to herself."[2]

[¶33] On appeal, the defendant maintains that, due to the lack of testimony by the complainant and the State's failure to elicit any foundation as to how the complainant's behaviors related to her delayed disclosure, testimony describing such behavioral changes offered no evidentiary value. The State responds that, in allowing the complainant's family members to testify about their observations of the complainant's behaviors, the trial court appropriately limited their testimony to observed behaviors and left the jury to draw its own inferences from the evidence regarding the complainant's credibility, state of

---

[2] At trial, the complainant's father also testified that the complainant would get "visibly upset" and become angry after spending time at her grandmother's house. We do not consider this testimony to constitute evidence of a behavioral or characteristic change. Rather, this evidence appears to describe a specific observation regarding the complainant's demeanor presumably after she had contact with the defendant.

mind, and allegations of sexual abuse. The State maintains that expert testimony was not required to explain the complainant's behavioral changes and that the admission of such evidence was not overly prejudicial because it did not cause the jury to convict the defendant based on emotion.[3]

[¶34] Under Rule 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." N.H. R. Ev. 401. We agree with the defendant that the complainant's testimony failed to establish a connection between her behavioral changes and characteristics and the only basis for which the trial court admitted the evidence — to explain the complainant's delayed disclosure. Absent any foundation from the complainant's testimony, this evidence did not tend to prove that the complainant's behavioral changes and characteristics caused her to delay disclosing her allegations of abuse. Therefore, because evidence of the complainant's behavioral changes and characteristics was not relevant for the purpose for which it was admitted, we conclude that the trial court's admission of this evidence was clearly untenable or unreasonable. See Clark, 174 N.H. at 589.

[¶35] Although the State argues that this evidence allowed the jury to draw its own inferences regarding the complainant's credibility and mental state, the trial court admitted the evidence based on its determination that the evidence was relevant to explain the complainant's delayed disclosure. Because it specifically ruled that this evidence was relevant to explain the complainant's delayed disclosure, the trial court never considered whether this evidence was relevant for reasons now proffered by the State. When, as in this case, a discretionary decision is at issue, we may sustain the trial court's ruling on a ground upon which it did not rely only if there is only one way the trial court could have found as a matter of law. State v. Hayward, 166 N.H. 575, 583 (2014) (quotation omitted). Even if we assume that the evidence may be relevant for another purpose, the trial court did not consider the evidence under alternative theories of relevance and weigh the probative value against the risk of unfair prejudice under Rule 403, and we cannot conclude that there is only one way the trial court could have found as a matter of law. As a result,

---

[3] We agree with the State that our prior cases neither prohibit fact witnesses from testifying about the behavioral characteristics and changes of a child sexual abuse victim nor require an expert for such testimony to be admissible. See State v. Cressey, 137 N.H. 402, 410-12 (1993). In Cressey, we ruled that the State may offer expert testimony to explain the behavioral characteristics commonly found in child sexual abuse victims to preempt or rebut any inference that the child victim witness is lying, but that an expert may not "affirmatively state that a child has been sexually abused." Cressey, 137 N.H. at 411-12. However, this language narrowly refers to the fact that an expert cannot opine as to whether a particular child has been sexually abused. Id. at 410-12; see also State v. MacRae, 141 N.H. 106, 108-10 (1996); State v. Marden, 172 N.H. 258, 263-65 (2019).

we cannot affirm its decision on the alternative grounds identified by the State on appeal.  See id.

C.  Harmless Error

[¶36] The State argues that, even if the trial court erred in admitting evidence of the complainant's alleged behavioral changes and characteristics, the error was harmless beyond a reasonable doubt.  Specifically, the State asserts that its case against the defendant was strong, the other evidence of the defendant's guilt was overwhelming, and the contested evidence was of little consequence given the other behaviors about which the complainant and her family testified at trial.

[¶37] "[T]o establish harmless error, the State must prove beyond a reasonable doubt that the error did not affect the verdicts."  State v. Boudreau, 176 N.H. 1, 11 (2023) (quotation omitted).  "This standard applies to both the erroneous admission and exclusion of evidence."  Id.  "[W]e consider the alternative evidence presented at trial as well as the character of the erroneously admitted evidence itself."  Id. (quotation omitted).  "To determine whether the State has proven beyond a reasonable doubt that an error did not affect the verdict, we must evaluate the totality of the circumstances at trial."  Id. at 11-12.  The factors that we have considered in assessing whether an error did not affect the verdict include, but are not limited to: (1) the strength of the State's case; (2) whether the admitted or excluded evidence is cumulative or inconsequential in relation to the strength of the State's case; (3) the frequency of the error; (4) the presence or absence of evidence corroborating or contradicting the erroneously admitted or excluded evidence; (5) the nature of the defense; (6) the circumstances in which the evidence was introduced at trial; (7) whether the court took any curative steps; (8) whether the evidence is of an inflammatory nature; and (9) whether the other evidence of the defendant's guilt is of an overwhelming nature.  Id. at 12.  No one factor is dispositive.  Id.

[¶38] Here, our review of the record reveals that the State's case against the defendant was not strong and that the alternative evidence of the defendant's guilt was not overwhelming.  The defendant testified in his own defense and repeatedly denied sexually abusing the complainant.  The defendant also denied that he spent time with the complainant and her sister during the week in the summer of 2006 and that he ever spent time alone with the complainant.  Although the complainant testified in detail that the defendant sexually assaulted her on the couch in the middle of the day during the week, the defendant's denials were consistent with the complainant's grandmother's testimony that the girls never visited during the week and that, when the girls visited, they were always together and were never alone with the defendant.  In addition, the complainant's mother testified that the complainant visited her grandmother and the defendant alone only once or

12

twice during the summer of 2006. The complainant's sister similarly testified that she and the complainant were always together whenever they visited their grandmother's house. Thus, the complainant's testimony that she and the defendant were alone "more than 5 but not more than 15 to 20 times" was contradicted by multiple witnesses.

[¶39] In addition, we reject the State's argument that the evidence of the complainant's nightmares, weight gain, anger, and eyelash plucking was "'of little consequence given the plethora of references to other' changed behaviors exhibited by the victim to which the defendant did not object." (Quoting State v. Thibedau, 142 N.H. 325, 329 (1997).) Specifically, the State references evidence that the complainant did not want to see the defendant, that she was "visibly upset" after returning from the defendant's house, that she told the defendant that she did not love him, that she threatened to stab her sister with a knife, and that she used marijuana at age fourteen to cope with anxiety and depression. Although the defendant did not object to the admission of evidence of each of the "other changed behaviors" the State references, a review of the record reveals that much of this additional evidence was admitted only after the trial court overruled the defendant's standing objection to evidence of the complainant's behavioral changes and characteristics, including the complainant's angry outbursts and her development of anxiety and depression.

[¶40] Moreover, the evidence of the complainant's behavioral changes and characteristics was "lengthy, comprehensive, [and] directly linked to a determination of the guilt or innocence of the defendant." Boudreau, 176 N.H. at 14 (quotation omitted). The complainant's mother, sister, and father all testified about the alleged behavioral changes and characteristics challenged here. The State also introduced photographs showing the complainant's weight gain and plucked-out eyelashes over the defendant's objection. In addition, the State repeatedly referenced this evidence in its closing argument and suggested to the jury that the complainant's behavioral changes were connected to the alleged abuse despite the limited purpose for which the evidence was originally offered and admitted. Testimony by three of the complainant's family members, all of whom testified consistently about her behavioral changes following the time frame of the alleged abuse, supported the complainant's credibility and therefore may have influenced the determination of guilt or innocence of the defendant. Therefore, because we cannot conclude that the trial court's error in admitting evidence of the complainant's behavioral changes and characteristics did not affect the verdict, the error was not harmless beyond a reasonable doubt. See id. at 11.

> Conviction on Charge ID Number 1926120C reversed;
> conviction on Charge ID Number 1926118C reversed and remanded.

MACDONALD, C.J., and BASSETT and HANTZ MARCONI, JJ., concurred.

13