# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2023-0754, <u>State of New Hampshire v. Casely Schandorf</u>, the court on May 29, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order.  <u>See</u> <u>Sup. Ct. R.</u> 20(3).  The defendant, Casely Schandorf, appeals his convictions, following a jury trial in Superior Court (<u>Temple</u>, J.), on one count of attempted endangering the welfare of a child ("attempted endangering"), <u>see</u> RSA 629:1 (2016); RSA 639:3 (2016), and one count of attempted felonious sexual assault ("FSA"), <u>see</u> RSA 629:1 (2016); RSA 632-A:3 (Supp. 2024).  The defendant argues that the trial court erred by denying his motion to dismiss and motion to set aside the verdict because the State failed to produce sufficient evidence as to his intent and because the evidence established entrapment as a matter of law.  He also argues that the trial court erred by denying his motion to set aside the verdict based on the State's repeated <u>Brady</u> violations.  We affirm.

The jury could have found the following facts.  In May 2019, the Nashua Police Department (NPD) was leading a multijurisdictional operation to combat and deter the exploitation of children on the internet.  On May 21, 2019, the detective assigned to this operation created a persona, set up a profile, and posted an ad on an adults-only dating website called "SkiptheGames."  The ad listed the persona's age as 99 years old and said the persona was "visiting," and was "willing to provide services in exchange for compensation."  The ad used a photograph of a female NPD officer from when she was 17 years old.

On May 21, 2019, the defendant, who was traveling for work, was at his hotel in Nashua when he visited the SkiptheGames website to meet a woman, something which he had done previously.  The defendant saw the ad and initiated contact with the persona through an anonymous texting app, asking her what the "donation" was for an hour of her time.  The persona asked what the defendant was looking for, to which he responded that he was not seeking anything "weird," "[j]ust BJ and full service."  They arranged to meet the next night.  The persona then said "just so you know I'm 15 but I've hosted before," and "sorry i thought i mentioned that earlier."  The defendant represented both in his post-arrest interview and at trial that he did not see these two messages.

The following evening, the defendant texted the persona, asking her if they were "still on for today." The defendant and the persona had the following text exchange:

> Persona: yes of course! im not old enough to drive so your still comin over right???
>
> [. . .]
>
> Defendant: WAit are you underage?
>
> Persona: lol yes silly u knew that
>
> Defendant: That's illegal and I can't if you are
>
> Persona: alright im sorry
>
> Persona: if u change your mind im here
>
> Defendant: No I didn't
>
> Defendant: How old are you? Don't want to end up getting arrested and
>
> Persona: im 15 but everyone says i act old 4 my age! lol i can't get in trouble either. i wont say shit
>
> Persona: but its your call

The defendant then said it was "[h]ard to say," and that he "[m]ay stop by to drop off 20 without any service just to see." When the persona said she needed to make a date to make more money if he wasn't coming, the defendant told her the 20 dollars would be "just free" and that "[i]f you're legit we may do more but not committing to anything." The persona responded "lol well im legit but i don't play games and i only like sure things," and "thanks anyways tho." The defendant confirmed that the persona was not law enforcement and then said "10pm then." The persona asked if he was coming and asked if he "still want[ed] the full service and BJ" for 75 dollars. The defendant said yes, and that he "[m]ay do more time and donate more." He told the persona that he would have to drive her to his hotel and back, but "only if [she was] interested." The persona confirmed that she was interested.

They arranged for the defendant to pick up the persona at 10 p.m. and the defendant asked that she "[d]ress normal if [they were] going back to [his] place." The defendant testified that he requested this because he did not want to walk in to his hotel with somebody dressed in anything "suggestive." At

2

trial, the defendant testified that he was going to meet the persona to determine whether she was legitimate and verify her age.

When the defendant arrived at the persona's apartment, he was arrested. He testified that he cried and felt embarrassed because he knew that his wife would find out that he had been arrested and also knew that adultery and paying money for sex were bad. The defendant consented to a search of his vehicle, bag, and electronic devices. In that search, police found Viagra.

The defendant also consented to an interview with the detective and a Homeland Security agent. The defendant said in the interview that he had a "lapse in judgment" and made a mistake. However, he testified that he meant that he should have just "cut the conversation" as soon as he became aware that the persona was a minor. After a manual review of the defendant's electronic devices, the detective wrote in his report that "[b]ased on all this information, there's no evidence to suggest that [the defendant] is involved in any other incidence related to the sexual exploitation of minors."

After the State rested, the trial court denied the defendant's motion to dismiss the charges based on lack of sufficient evidence of his purposeful <u>mens rea</u>. The jury rendered a guilty verdict on both charges. The defendant then made a motion to set aside the verdict based upon the State's "repeated <u>Brady</u> violations" and the detective's entrapment conduct, which the trial court denied.

A. <u>Sufficiency of the Evidence</u>

We first address the defendant's challenges to the sufficiency of the evidence. A challenge to the sufficiency of the evidence raises a claim of legal error; therefore, our standard of review is <u>de novo</u>. <u>State v. Zuzelo</u>, 176 N.H. 499, 504 (2024), 2024 N.H. 14, ¶13. When considering such a challenge, we objectively review the entire record, including the evidence presented by the defendant, to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, considering all the evidence and all reasonable inferences drawn therefrom in the light most favorable to the State. <u>Id</u>.; <u>Id</u>. We examine each evidentiary item in the context of all the evidence, and not in isolation. <u>Id</u>.; <u>Id</u>.

The defendant has the burden of demonstrating that the evidence was insufficient to prove guilt. <u>State v. Pierce</u>, 176 N.H. 487, 492 (2024), 2024 N.H. 12, ¶19. When, as in this case, the evidence as to one or more elements of a charged offense is solely circumstantial, a defendant challenging sufficiency must establish that the evidence does not exclude all reasonable conclusions except guilt. <u>Id</u>. at 492-93; <u>Id</u>. The proper analysis is not whether every possible conclusion consistent with innocence has been excluded, but, rather, whether all reasonable conclusions based upon the evidence have been

3

excluded.  Id. at 493; Id.  We thus "evaluate the evidence in the light most favorable to the State and determine whether the alternative conclusion is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt."  State v. Boggs, 171 N.H. 115, 125 (2018) (quotation omitted).

1. State of Mind

The defendant first argues that the State produced insufficient evidence as to his intent to commit attempted endangering and attempted FSA.  The relevant section of the indictment for attempted endangering the welfare of a child charged that the defendant "solicited a person who he believed to be a child under the age of 16 to engage in fellatio, sexual penetration under RSA 632-A:1, V."  See RSA 639:3, III.  The relevant section of the indictment for attempted FSA charged that the defendant "text messaged a person who he believed to be a child over the age of 13 and under the age of 16 where the age difference between he and the person was greater than 4 years, and not his legal spouse, to engage in fellatio."  See RSA 632-A:3, II.  Both indictments provide that the defendant "went to a pre-determined location to meet [the persona], which under the circumstances as he believed them to be, constituted a substantial step toward the commission of the crime."

Both charges against the defendant are for "attempted" crimes under RSA 629:1, I, which defines "attempt" as follows:

> A person is guilty of an attempt to commit a crime if, with a purpose that a crime be committed, he does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step toward the commission of the crime.

RSA 629:1, I.  The parties do not dispute that for purposes of this appeal, the analysis for the sufficiency of the evidence on intent applies equally to both charges and they can be considered together.

The defendant contends that he "did not express any intent or desire to engage in sexual relations with a minor."  We disagree.  In response to the persona's disclosure of her age on the second day, the defendant said "[t]hat's illegal and I can't if you are [not of legal age]," and that he did not "want to end up getting arrested."  However, after the persona reassured him that she would not say anything and told him that it was his "call," the defendant continued the conversation.  He told her it was "[h]ard to say," that he "[m]ay stop by to drop off 20 without any service just to see," and that "[i]f you're legit we may do more but not committing to anything."  The persona responded "lol well im legit but i don't play games and i only like sure things," and "thanks anyways tho." The defendant, however, thereafter agreed to meet her and confirmed he "still

4

want[ed] the full service and BJ," and said he "[m]ay do more time and donate more." Upon the defendant's arrest, the police found a generic form of Viagra in the defendant's bag.

Both at trial and now on appeal, the defendant advances an alternative conclusion as to his intentions in going to the persona's apartment: that he went to the apartment to determine whether the persona was of legal age, not to engage in sexual activity with a minor. The defendant testified that after the persona told him she was fifteen, he "still wasn't sure" whether she actually was underage, and so he suggested that he "come out and verify" whether she was legitimate, i.e., not underage. He contends that the fact that the persona responded to his statement "[i]f you're legit we may do more," with the response "im legit," demonstrates that she was stating that she was not underage. The defendant also points to his testimony that, upon arrest, he cried and was embarrassed because he knew that his wife would find out he had been arrested and knew that adultery and paying money for sex were bad. He further explained that his comments during the police interview about making a "mistake" or having a "lapse in judgment" were in reference to going to the apartment, when he should have just "cut the conversation" as soon as he became aware that the persona may have been a minor. Regarding the Viagra found in his bag, the defendant testified that he has a prescription for it, and that particular pill had been in his bag from a trip several years prior and he had forgotten it was in there.

The defendant argues that the evidence at trial gave rise to an alternative, reasonable conclusion consistent with innocence. This conclusion relies entirely on the defendant's testimony and, thus, accepting the defendant's alternative conclusion "would require the jury to have credited the defendant['s] testimony." State v. Folley, 172 N.H. 760, 769 (2020). "However, in a sufficiency challenge, where we consider all the evidence and reasonable inferences therefrom in the light most favorable to the State, we assume the jury made all factual findings and credibility determinations necessary to support its verdict." Id. (quotation omitted). A jury is "free to accept or reject any portion of a witness's testimony and to resolve any conflicts in testimony." State v. Carr, 167 N.H. 264, 275 (2015) (quotation omitted). "Credibility determinations are within the sole province of the jury and will be upheld on appeal unless no rational trier of fact could have reached the same conclusion." Id. (quotation omitted). Here, "assuming all credibility resolutions in favor of the State, we conclude that the alternative explanation suggested by the defendant[ ] cannot be reasonably drawn from the evidence presented at trial." Folley, 172 N.H. at 769 (quotation omitted). This alternative conclusion would require the fact finder to conclude that the defendant went to the persona's apartment complex to confirm that she was not in fact underage, despite her telling him multiple times that she was. Based upon the evidence, such a conclusion is not sufficiently reasonable that a rational jury could not have found proof of guilt beyond a reasonable doubt. Boggs, 171 N.H. at 125.

5

The State was required to prove at trial that the defendant had a purpose to commit endangering the welfare of a child and to commit FSA. Based upon the totality of the evidence, considered in the light most favorable to the State, we conclude that there was sufficient evidence such that the jury could have found proof beyond a reasonable doubt that the defendant had a purpose to commit the charged crimes. Id.

2. Entrapment

We next turn to the defendant's argument that the trial court erred in denying his motion to dismiss and motion to set aside the verdict because the evidence established entrapment as a matter of law. RSA 626:5 defines entrapment as:

> [A]n affirmative defense that the actor committed the offense because he was induced or encouraged to do so by a law enforcement official or by a person acting in cooperation with a law enforcement official, for the purpose of obtaining evidence against him and when the methods used to obtain such evidence were such as to create a substantial risk that the offense would be committed by a person not otherwise disposed to commit it. However, conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

RSA 626:5 (2016).

Ordinarily, entrapment raises an issue of fact to be determined by the jury. State v. Campbell, 110 N.H. 238, 241 (1970). The court can, however, find entrapment as a matter of law, but "only where the undisputed testimony and required inferences compel a finding that the defendant was lured by the officers into an action he was not predisposed to take." Id. Entrapment as a matter of law is a sufficiency of the evidence inquiry that we review de novo, viewing all facts and making all inferences in favor of the State. United States v. Rutgerson, 822 F.3d 1223, 1234 (11th Cir. 2016); see United States v. Plowman, 700 F.3d 1052, 1057 (7th Cir. 2012).

"In New Hampshire, the determination of whether a legitimate entrapment defense exists involves elements of both a subjective and an objective test." State v. Larose, 157 N.H. 28, 34 (2008) (quotation and ellipses omitted). "Thus, we look at the conduct of law enforcement officials and their agents to determine whether they engaged in the kind of conduct that may have induced the accused to commit the crime charged." Id. at 34-35 (quotation, ellipses, and brackets omitted). "We also examine the defendant's own conduct and predisposition to determine whether he was ready to commit the crime and the police only furnished him an opportunity to do so." Id. at 35 (quotations and citations omitted). "Under New Hampshire law, therefore, the

6

entrapment defense consists of two elements: (1) government inducement; and (2) the lack of predisposition on the part of the defendant to engage in the alleged criminal conduct." Id.

We first assess the government inducement prong. Inducement "goes beyond providing an opportunity to commit a crime," "contemplates more than a request and an affirmative response," and "is more than a solicitation." Id. (quotations and citations omitted). An inducement consists of an opportunity plus something else — typically, excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive. Id. at 36. Courts have found a basis for entrapment where government officials:

> (1) used intimidation and threats against a defendant's family; (2) called every day, began threatening the defendant, and were belligerent; (3) engaged in forceful solicitation and dogged insistence until defendant capitulated; (4) played upon defendant's sympathy for informant's common narcotics experience and withdrawal symptoms; (5) played upon sentiment of one former war buddy for another to get liquor (during prohibition); (6) used repeated suggestions which succeeded only when defendant had lost his job and needed money for his family's food and rent; [and] (7) told defendant that she (the agent) was suicidal and in desperate need of money.

Larose, 157 N.H. at 36 (quotation omitted).

The defendant argues that the NPD induced him to commit the crimes charged. He admits that he was seeking to solicit sex, but consistently testified that he was seeking to do so from an adult woman. The advertisement was on an adults-only website, did not provide a real age, and used a photo of a 17-year-old girl. It is thus reasonable to conclude that the defendant believed her to be an adult woman when the two initially communicated with one another.

However, there is no evidence in the record of inducement after the defendant learned that the persona was underage. In response to the defendant's statement that "I can't if you are [not of legal age]," the persona said "alright im sorry," and "if u change your mind im here." After providing her age again, the persona assured the defendant that she would not say anything and said it was his "call." Finally, the persona stated that she "only like[d] sure things," and "thanks anyways tho." Yet still, the defendant continued on, confirming he "still want[ed] the full service and BJ" and potentially more, and ultimately drove to an apartment to meet the persona. United States v. Hinkel, 837 F.3d 111, 119 (1st Cir. 2016) ("the important point is that [the defendant] was offered and declined a clear exit at the outset").

7

In response to the defendant's text that he may stop by "just to see," the persona responded that she needed to make a date to make more money if he was not coming. Although we have noted that courts have found a basis for entrapment where a persona told the defendant she was in "desperate need of money," Larose, 157 N.H. at 36, these facts do not present such a scenario. The persona only said she "needed to make a date" to make money, she did not plead or pressure the defendant to be that date and provide the money.

The defendant likens the facts of his case to those in United States v. Lofstead, where an FBI Task Force in Nevada initiated a reverse-sting operation targeting individuals seeking to purchase commercial sex from anyone under 18 years old, which is the legal age for commercial sex despite the legal age for general consensual sex being sixteen. United States v. Lofstead, 574 F. Supp. 3d 831, 836 (D. Nev. 2021). Though Lofstead includes facts similar to the defendant's case, including that the defendant suggested he just meet the persona and that the persona rejected this offer because she needed the money, we agree with the State that it is distinguishable. Id. at 837. In Lofstead, the police created a 19-year-old persona and used pictures of a 23-year-old woman in the ad. Id. at 836. The persona later told the defendant that she was sixteen years old, the defendant tried to confirm her age multiple times, and he expressly declined her offer that he have sex with the persona's 15-year-old friend as she was under sixteen, which is what he understood to be the age of consent. Id. at 837, 853. The court found there was "clearly evidence that the government encouraged [the defendant] to continue with the encounter despite his clear hesitation." Id. at 854. The court relied on the fact that the defendant was acting on the belief that the legal age for commercial sex was sixteen, which the persona said was her age. Id. at 849. Here, unlike Lofstead, the persona told the defendant that she was fifteen, which, as the defendant knew, would make any sexual encounter with the persona illegal. See RSA 632-A:3, II. Further, unlike Lofstead, the persona said she was unavailable on their first day of text messaging and allowed the defendant to initiate the conversation to confirm their encounter the following day. See Lofstead, 574 F. Supp. 3d at 836-37. Finally, unlike the Lofstead persona's offer that the defendant also have sex with her 15-year-old friend, the persona here did not offer the defendant any additional sexual acts beyond what the defendant requested.

Here, the defendant admitted at trial that he did not feel pressured to meet the persona for sex and she did not trick him into meeting her. The defendant texted with the persona for only two days, with fewer than one hundred messages exchanged. There is no evidence that the police used intimidation or threats, nor did they play on the defendant's sympathy or sentiment. See Larose, 157 N.H. at 36. There is also no evidence of the police engaging in forceful solicitation or insistence. See id. The record does not demonstrate any excessive pressure by the government or the government's taking advantage of an alternative, non-criminal type of motive. See id.

8

Instead, the NPD simply provided the defendant with the opportunity to commit a crime.  See id.  Based on the evidence, considered in the light most favorable to the State, we conclude that the government did not induce the defendant into committing attempted endangering or attempted FSA.

Because we conclude that the government did not induce the defendant, we need not address the sufficiency of the defendant's evidence that he was not predisposed to commit the charged offenses.  See Larose, 157 N.H. at 38.  We determine that the defendant has not established entrapment as a matter of law.  See Campbell, 110 N.H. at 241.

B. Brady Violations

"The State and Federal Due Process Clauses require the State to disclose information favorable to the defendant that is material to guilt or punishment." State v. Verrill, 175 N.H. 428, 440 (2022).  "Favorable evidence is 'material' if there is a reasonable probability that, had it been disclosed to the defense, the result of the proceeding would have been different."  Id.  The government's failure to disclose favorable, material information to the defense is referred to as a Brady violation.  Id. at 441; see Brady v. Maryland, 373 U.S. 83, 87 (1963).  Although under the Federal Constitution the defendant has the burden of proving the evidence is "material," under the State Constitution, "once the defendant has shown that favorable, exculpatory evidence has been knowingly withheld by the prosecution, the burden shifts to the State to prove beyond a reasonable doubt that the undisclosed evidence would not have affected the verdict."  Verrill, 175 N.H. at 441.

We assume that the "subject evidence" that the defendant discusses in his brief refers to documents the defendant requested, but did not receive, in pretrial discovery, which we understand to be the grant, budget, and arrest records from the NPD's multijurisdictional operation.  We conclude that the defendant has not established that these items were favorable or exculpatory, or that the State knowingly failed to disclose them.  He thus failed to meet his burden in establishing a Brady violation.  Verrill, 175 N.H. at 441.

In conclusion, because we find that there was sufficient evidence as to the defendant's intent to commit the charged offenses, that the defendant did

9

not establish entrapment as a matter of law, and that the defendant did not meet his burden to establish a <u>Brady</u> violation, we affirm.

<u>Affirmed</u>.

BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,
Clerk**